## ARTESIAN WATER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9824.

Circuit Court of Appeals, Ninth Circuit.

Jan. 22, 1942.

George G. Witter, of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, Sherley Ewing, Edward First, and Claude R. Marshall, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from a decision of the United States Board of Tax Appeals sustaining the determination of the Commissioner of Internal Revenue that the petitioner, to whom we shall refer as taxpayer, is subject to the undistributed profits tax imposed by the Revenue Act of 1936, Section 14, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int. Rev.Acts, page 824, for not having distributed its income to its stockholders in the calendar year 1937. The correctness of this determination is the sole question involved in this appeal.

In resisting the tax, the taxpayer relies upon Section 14(d) (2), exempting from payment of the tax "Domestic corporations which for any portion of the taxable year are in bankruptcy under the laws of the United States, *or are insolvent and in receivership* in any court of the United States or of any State, Territory, or the District of Columbia." (Emphasis supplied.)

Briefly stated, the facts are: The taxpayer, a California corporation, was the owner of certain real property, and certain oil leases. From the income producing standpoint an oil lease, which is referred to in the record as the Shell Oil lease, which yielded more than 90 percent of all taxpayer's income during the taxable year, was the most valuable of all these properties. On November 12, 1929, taxpayer refinanced a loan owing by it to the Pacific Mutual Life Insurance Company by delivering to the insurance company two promissory notes, for $175,000 and $35,000 respectively, due five years after date, or on November 12, 1935, and pledged as security therefor all of its income producing assets. This included an assignment of the Shell Oil lease and all the income therefrom. Taxpayer had substantially no debts except the amounts which it owed to the Pacific Mutual Life Insurance Company.

On July 16, 1935, William E. Ware was appointed receiver for the taxpayer. The receivership proceeding was not brought, nor was it continued, by reason of the inability of the taxpayer to pay its debts, but it arose out of an action by one J. Baldwin

against Frederick Ringe, who was a stockholder of the taxpayer. Baldwin had a judgment against Ringe which apparently could not be satisfied. Baldwin located a safe deposit box used by Ringe which contained some of the capital stock of taxpayer. The stock was acquired by Baldwin under a sheriff's sale and in due course application was made to have the stock thus acquired by Baldwin transferred to him on the corporate records of taxpayer. Taxpayer's corporate officers refused to transfer the stock to Baldwin, whereupon he petitioned the State Court for the appointment of a receiver, on the ground that the corporate officers were not functioning under the code. The action resulted in the appointment of Ware as receiver. The Pacific Mutual Life Insurance Company had no part in the appointment of the receiver, nor did it at any time press for the continuance of the receivership.

Ware as receiver took over taxpayer's properties and immediately began negotiations with the insurance company for an extension or renewal of taxpayer's indebtedness. While these negotiations were pending, a conservator was appointed for the insurance company by the State Insurance Commissioner of California. There is nothing in the record to show that the appointment of the conservator by the insurance commissioner had anything to do with the indebtedness of taxpayer. After the conservator for the insurance company took charge, he disapproved the loans to the taxpayer on account of an interlocking relationship between the two corporations and refused any further extension of time for their payment. The receiver then attempted to refinance the loans through brokers but was unsuccessful owing to questions raised over his legal authority to pledge the intrusted assets.

In the circumstances, the insurance company consented to "informally" allow the taxpayer until March 2, 1937, to refinance the loans, conditioned upon certain payments being made during the ensuing period. Taxpayer paid $25,000 upon the notes during the year 1936 and made additional payments during 1937 which reduced the joint balance on the notes to $100,250.

In claiming exemption from taxation in the year 1937, taxpayer contends that it was insolvent in that it was unable to pay this $100,250 debt at maturity and that it was also in receivership, thus bringing it within the terms of the statute allowing exemption.

The Board of Tax Appeals, in holding that the taxpayer was not exempt, pointed out that "it is clear that petitioner was in receivership, but it is also equally clear that this receivership was not occasioned by any insolvency of petitioner" [43 B.T.A. 408, 412]. The Board then held that the taxpayer was not "insolvent" within the meaning of the act, since it listed as assets in its balance sheet, properties of a value of $1,162,789.84, while its liabilities were listed at $144,255.21.

The Commissioner in his brief divides his argument upon this phase of the case into two subdivisions. First it is urged that "the receivership intended by this section was obviously intended to mean one caused by financial difficulties and not one arising from disputes between the stockholders, charges of mismanagement, failure to obey the laws, etc." We do not agree. There is nothing in the statute or in the authorities to our knowledge that provides that in order to fall within the terms of the statute a corporation must be in receivership because of its insolvent condition. So far as the statute provides, it is enough if the corporation is insolvent and in receivership, and the nature of the receivership proceeding is immaterial.

It is next urged that the finding that the taxpayer was not insolvent within the meaning of the act must be upheld, and that the taxpayer therefore does not fall within the terms of the exemption statute.

It is certain, of course, that the taxpayer was not insolvent in a bankruptcy sense of having liabilities exceeding assets. As stated above, its assets exceeded one million dollars, and its liabilities were less than one hundred and fifty thousand dollars. We are unable to agree with the apparent holding of the Board that a corporation must be insolvent within this sense of the word in order to be entitled to exemption. See United States v. Anderson Co., 7 Cir., 119 F.2d 343, 346, and authorities therein cited.

It follows, then, that if the finding of solvency is to be affirmed, it must be on the basis that the taxpayer was able to meet its obligations as they matured, in the usual course of trade or business. We find no support in the record for such a finding. It is clear that the notes to the Pacific Mutual Life Insurance Company became due after the "informal extension", in the year 1937, the tax year in question. It is equal-

ly clear that the taxpayer was unable to meet this obligation at its maturity, either from its current assets or with "the reasonable use of the debtor's credit." United States v. Anderson Co., supra. As stated above, all of the taxpayer's income bearing assets were pledged to the Insurance Company as security for the loans, and in view of the receivership taxpayer's hands were just as effectively tied as if it had been in bankruptcy. As well put by the taxpayer in its brief, "The solvency or insolvency of the petitioner, that is, its ability to pay its debts, must be determined in the actual situation in which the petitioner is found in the taxable year, and not in some false and assumed situation in which it is not found, for example, free from receivership".

The decision of the Board of Tax Appeals that taxpayer is not exempt from the tax in question is reversed. In view of our decision on this point we find it unnecessary to consider the taxpayer's alternate argument to the effect that it was exempt under Section 26(c) of the Act, 26 U.S.C.A. Int.Rev.Acts, page 836, relating to contracts in writing prohibiting the payment of dividends.

Reversed.