**MASSEY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. MASSEY et al.**

**SAME v. MASSEY (two cases).**

**No. 10927.**

Circuit Court of Appeals, Fifth Circuit.

June 28, 1944.

Rehearing Denied Sept. 23, 1944.

William Benson Massey, of Shreveport, La., for taxpayers.

Joseph M. Jones, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This case presents four petitions for review involving asserted deficiencies in income taxes of W. B. Massey and his wife. The questions presented relate to the tax incidence of cash and oil interests received by Massey as payment for legal services rendered. The proceedings were consolidated before the Board of Tax Appeals, and the petitions for review were consolidated for hearing and adjudication in this court.

In 1933, Gus Gipson executed a mineral lease covering his undivided 5/16 interest in forty acres of land in Louisiana. In 1935, Gipson's mother by written agreement employed the taxpayer to have her son interdicted as an insane person with her as curatrix, to procure an annulment of the mineral lease as to the 5/16 interest, and to assist either in obtaining a new lease or ratifying the old one. The contract provided that, if the attorney performed these services successfully, he should be paid ½ of whatever sum of money might be paid for a new lease or ratification of the old one. This contingent-fee contract was approved by the court.

While the litigation contemplated by the contract was in progress, the property was successfully drilled. In view of this development, the court approved an amendment to the contract to provide that, in the event the parties considered it advisable to hold the full 7/8 working interest in the property free of lien, then the attorney should have 1/2 of 7/8 of the minerals produced therefrom, or the proceeds thereof, in lieu of the compensation previously agreed upon, but should pay his proportionate part of the cost of drilling, equipping, and operating the wells out of. the proceeds.

On December 21, 1936, by means of the taxpayer's services, the son had been adjudicated an interdict, his mother had been made curatrix, and on that date the judgment decreeing the mineral lease void as to the 5/16 interest became final. On December 30, 1936, the curatrix and the taxpayer executed a written document reciting that, pursuant to their contract of 1935 as amended, they elected to keep the 5/16 interest free of a lease, whereupon, in payment of services rendered, the curatrix transferred and conveyed to Massey 1/2 of 7/8 of the oil, gas, and other minerals that had been or might be produced from the 5/16 interest in the property, subject to his payment of a like proportion of the costs of drilling, equipping, and operating wells thereon. This document was approved by the court on Jan. 4, 1937.

In February, 1937, an accounting was had with the oil companies that owned the working interest on the balance of the tract with regard to the value of the oil captured as of December 31, 1936, and the costs of its production. The taxpayer's portion was $12,632.18 after deducting costs of production, and this sum was paid to him. The taxpayer's interest in the oil in place as of December 30, 1936, was determined to have a fair market value of $32,862.65.

These questions are presented for decision: (1) In what calendar year was the cash payment of $12,632.18 taxable as income? (2) Was the taxpayer entitled to percentage depletion deductions with respect to the cash payment? (3) Was the fair market value of the interest received in the oil in place taxable as income, and (4) if so, in what year?

The question as to whether the oil interest was taxable income may be simply answered. The transfer of the interest was made in consideration of services rendered. Article 22(a)-3 of Treasury Regulations 94, which was in force under the Revenue Act of 1936 and prior acts, provides that if services are recompensed with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. This regulation, by tacit ratification, has the approval of Congress and must be given effect.

The taxpayer made his returns on the cash receipts and disbursements basis. He was accordingly liable for taxes in each year only upon income actually or constructively received in that year, and owed no tax with respect to income that was not and might never be received.[1] The cash payment was not actually received until 1937. It could not have been constructively received earlier, for his right to any cash payment at all was conditioned upon the outcome of the accounting. If the expenses of production had exceeded the proceeds derived from the sale of the oil produced, no cash payment would have been due the taxpayer under the terms of his agreement. The accounting was had in February, 1937, so that the cash payment thereby determined to be due was actually and constructively received in 1937.

For another reason, we are convinced that both the cash payment and the fair market value of the interest in the oil in place were taxable as income in the year 1937. The agreement under which

---

[1] Burnet v. Logan, 283 U.S. 404, 51 S. Ct. 550, 75 L.Ed. 1143; North American Oil Consolidated Co. v. Burnet, 286 U. S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Farrell v. Commissioner, 5 Cir., 134 F.2d 193.

the taxpayer's rights arose and pursuant to which the income was received was a contract involving the transfer of a real-property interest of an interdict by private sale. Except where the sale is to effect a partition, the law of Louisiana in force at the time these transactions took place provided that the real property of an interdict in Louisiana could be sold at private sale only by authority of an order of the court entered pursuant to proceedings by petition and hearing in conformity with statutory requirements.[2] The law made no express provision for ratification of private sales made by the curatrix without authority of a court order, but contemplated that the order should anticipate the sale.[3] Whether or not the court order entered January 4, 1937, had the effect of conferring validity upon the instrument executed by the curatrix on December 30, 1936, it is clear that no act of the curatrix in 1936 or prior thereto was of itself sufficient to make a valid transfer of any property of the interdict to the taxpayer. The premature transfer of title by the instrument executed in 1936 was a nullity, at least until the court order of January 4, 1937, was entered; and the taxpayer received nothing accountable as income prior to the entry of the court order. We therefore conclude that both the cash payment of $12,632.18 and the fair market value of the oil interest should have been returned by the taxpayer as income for the calendar year 1937.[4]

The final question is whether the taxpayer was entitled to percentage depletion deductions with respect to the cash payment of $12,632.18. Though this sum represented the proceeds of oil produced, it was reduced to personalty and sold before the taxpayer's interest therein became vested. He did not acquire a depletable mineral interest, but a right to receive a sum of money with regard to which no principle of depletion allowances applied.[5]

The decisions of the Board of Tax Appeals are affirmed in part and reversed in part, and the causes are remanded for a recomputation of the deficiencies in accordance with this opinion.

[2] Act No. 209 of 1932, Section 4844 et seq., Dart's Louisiana General Statutes.

[3] Act No. 209 of 1932, § 4, Section 4847 of Dart's Louisiana General Statutes provides that in such sales "the judgment of the Court shall fix the minimum price to be accepted, the cash or credit terms of the sale, and the security to be given the minor or interdict to secure the credit portion of the purchase price."

[4] Article 42-2 of Treasury Regulations 94 provides that where income is not actually reduced to possession, it must be credited or set apart to the taxpayer without any substantial limitation or restriction, made readily available to him, and its receipt brought within his control and disposition in order to be taxable as income received during the taxable year.

[5] Helvering v. Bankline Oil Co., 303 U. S. 362, 58 S.Ct. 616, 82 L.Ed. 897; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Atlas Milling Co. v. Jones, 10 Cir., 115 F.2d 61.