**BARNHART–MORROW CONSOLIDATED v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10806.

Circuit Court of Appeals, Ninth Circuit.

June 22, 1945.

As Amended on Denial of Rehearing Aug. 6, 1945.

---

[2] Cf. United States v. One Kissel Touring Automobile, D.C., 289 F. 120.

286

Harold C. Morton and Leon B. Brown, both of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, Leonard Sarner and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS and BONE, Circuit Judges.

DENMAN, Circuit Judge.

Taxpayer and petitioner Barnhart-Morrow Consolidated seeks review of the decision of the Tax Court sustaining the determination of deficiencies in taxpayer's income tax for the calendar years 1936 and 1937. That decision is contended to be erroneous in respect to four separate issues.

A. The first is as to taxpayer's claim that the Tax Court erred in holding that as to the year 1936 taxpayer had not maintained its burden of proof that it was insolvent and in receivership in such sense that under Section 14(d) (2) of the Rev-

enue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 824, it was entitled to an exemption from the surtax on undistributed profits.

Taxpayer is a California corporation engaged in the production of oil and gas from wells in which it had certain property interests. In 1927, 1928, and 1930, it began operating such wells in the Santa Fe Springs field. While so operating in 1931, an action entitled Julian v. Schwartz was commenced in a California state court in which Julian, claiming to be the owner of these properties, sought to restrain Schwartz from taking their possession. In this action Schwartz and certain other persons on cross-complaint claimed to be the owners of the oil well properties and of all production therefrom. Taxpayer became a party under its claim of right to operate the wells.

On March 19, 1931, the superior court in this action appointed two individuals as receivers to operate the wells under claimed oil rights of the contending parties. They were authorized to sell the products of the properties, paying therefrom royalties and expenses incident to the receivership and the operation of the wells and to retain other funds until further order of the court. In April of 1931 one receiver was discharged by the court. On March 23, 1932, the court appointed two trustees to operate the wells and continued the receivership during the litigation to determine taxpayer's and others' rights to the properties. A judgment favorable to the taxpayer was given by the superior court on September 7, 1933. This was affirmed by the district court of appeal on August 28, 1936. 16 Cal.App.2d 310, 60 P.2d 887. The adjudication became final on October 28, 1936, when hearing was denied by the California supreme court. The receivership was then terminated and the properties restored to the taxpayer.

In another action filed in a California state court on July 29, 1931, one D. R. Morrow brought an action against taxpayer Hardison, and Barnhart (the latter two being officers of taxpayer) for an accounting of the affairs of taxpayer. The petition raised no question of taxpayer's solvency, but was based upon mismanagement, discrimination against the stockholders in alleged unlawful and excessive salaries paid to Hardison and Barnhart, and there was sought the appointment of a receiver to take charge of the affairs and assets of tax-

payer pendente lite. The court immediately appointed a receiver, Ralph S. Armour, who then controlled the few assets in oil properties of taxpayer not already controlled in the Julian v. Schwartz suit.

After the final termination of the Julian suit, the receiver in the Morrow litigation filed his final account on November 12, 1936. The court, in its order of the same day approving the account, remarked that it "appearing * * * That defendant, Barnhart-Morrow Consolidated, a corporation, *is no longer insolvent* by reason of its success in the litigation, No. 315-45, in this court, now finally determined on appeal, and that by reason of the termination of said litigation and the present *solvency* of said corporation, there is no longer any reason for the continuation of said receivership herein, * * *." (Emphasis supplied.)

The court then directed that the receiver's expenses be paid out of the first moneys accruing and paid to taxpayer, and terminated the receivership. The remarks of the court regarding solvency are mere surplusage since the receivership was not initiated or continued because of a claim of taxpayer's insolvency.

The wells were operated by the Julian v. Schwartz receiver and trustees for the period extending from December 1, 1930 to November 14, 1936. Taxpayer's share of the gradually accumulated gross proceeds was $488,903.65. The expenses were $223,352.83, leaving a balance of $265,550.82 payable to taxpayer. Of this net amount of impounded funds due to taxpayer, $142,989.99 was paid to it in 1936; $122,371.37 in 1937, and a small balance in later years.

Section 14(d) (2) provides:

"Sec. 14. *Surtax on Undistributed Profits* * * *

(d) *Exemption from Surtax.* The following corporations shall not be subject to the surtax imposed by this section * * *.

"(2) Domestic corporations which for any portion of the taxable year are in bankruptcy under the laws of the United States, or are insolvent and in receivership in any court of the United States or of any State, Territory, or the District of Columbia."

Taxpayer asserts that the above-stated facts show that it was insolvent and in receivership and hence that it comes within this section's requisites for exemption from the surtax.

■ It will be noted that the exemption from surtax is granted only to corporations which, during a portion of the taxable year, are both in receivership and insolvent. That taxpayer was in receivership during the year 1936 within the meaning of the statute is not disputed. Besides the receivership of the wells in the Julian v. Schwartz suit, taxpayer was itself in receivership occasioned by Morrow's suit for an accounting of its affairs. That the receiverships were not occasioned by insolvency is conceded to be a matter of indifference. It is the fact of insolvency, however proved, which is determinative. Artesian Water Co. v. Commissioner of Internal Revenue, 9 Cir., 125 F.2d 17.

■ In this respect we agree that the taxpayer has not maintained its burden of proof. Taxpayer's admitted liabilities on December 31, 1935, as shown by the balance sheet, amounted to $43,789.66 and had not been materially reduced in the past five years. However, its balance sheet shows personal property in equipment, automobiles, etc., in value in excess of $43,789.66, title to which is not shown to be involved in the Julian v. Schwartz receivership.

It also may be, as the taxpayer urges, that "In the year 1931 petitioner has sustained a net loss of $90,116.67 and the years 1932-35, inclusive, had brought additional losses of over $13,000.00. Petitioner's balance sheet as of December 31, 1935, showed a deficit of $172,161.65. For almost five years all of the capital assets shown on the balance sheet (with the exception of office furniture carried at $811.50) had been in the possession of receivers and trustees appointed in the case of Julian v. Schwartz, and, as the court found, 'were being claimed by Schwartz and the holders of participating oil agreements as asserted in the proceeding.' Had Schwartz and the holders of participating oil agreements prevailed in the litigation, petitioner would have been hopelessly bankrupt, for not only were they claiming the oil wells as their own, but they were also asserting an obligation on the part of petitioner to account for past production."

■ This proof does not go far enough. Exemptions from taxation are a matter of legislative grace. To secure them the taxpayer must show clearly that it comes within their scope in every respect. Helvering v. Northwest Steel Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. No more was shown than that available current assets were insufficient to meet accrued liabilities. The test of insolvency in this context involves an additional requirement. The taxpayer is required to show that it was unable to meet obligations as they mature, not only by employing available assets but also by the alternative means of a reasonable use of credit. United States v. Anderson Co., 7 Cir., 119 F.2d 343; Artesian Water Co. v. Commissioner of Internal Revenue, supra.

■ The testimony is no more than that the taxpayer "was without funds to pay their obligations or conduct their affairs." The above-quoted statements of the state court, in dissolving the Morrow receivership, respecting taxpayer's solvency are mere dictum, and without probative value.

Thus it is not made to appear that any effort was made to borrow money to pay liabilities accrued. With its title to properties producing a net of $265,550, established in the superior court in 1933, taxpayer well could have a credit greatly in excess of its accrued liabilities.

B. Taxpayer next contends that the Tax Court erred in computing its undistributed net income for 1936 for surtax purposes, in refusing to deduct taxpayer's deficit as of December 31, 1935. Section 14(a) (2) of the Revenue Act of 1936 provides for a surtax on the undistributed net income of a corporation. Section 501(a) of the Revenue Act of 1942, approved October 21, 1942, added to the 1936 Revenue Act Section 26(c) (3), 26 U.S.C.A. Int.Rev.Acts, providing a deduction of a deficit in accumulated earnings and profits from the base on which the surtax is to be calculated. The incidence and extent of that deduction is stated as follows: "In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit and in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

The Tax Court's original opinion was promulgated on August 20, 1942, several months before the passage of the above-quoted section, which also followed the making of the first motion for rehearing, filed on September 17, 1942.

On December 4, 1942, after the passage of Section 26(c) (3), the Tax Court made

an order that final computation of the entire tax upon the determination of all issues contested should be made under Rule 50. In taxpayer's computation, submitted on March 26, 1943, taxpayer suggested its right to this deficit credit; reference was made to the balance sheet of December 31, 1935, the only evidence in the record bearing upon the matter of a deficit "as of the close of the preceding taxable year." This shows an alleged deficit of $172,161.65, but does not purport to indicate whether it is in accumulated earnings and profits in contrast, for example, to a deficit caused by distribution of capital to shareholders or wasting of natural resource assets, or other capital depletion such as by uninsured fire or breakdown of machinery.

On May 5, 1943, a hearing was held on the final recomputations submitted. The court indicated that it would consider the applicability of Section 26(c) (3), but expressed some doubt as to whether, in the then state of the record, its benefits would be available to taxpayer. Taxpayer made no effort to introduce further evidence at this hearing; the court made it clear that, while it would not consider such introduction proper, it by no means intended to foreclose bringing in of new material for consideration through a separate motion.

█ Counsel for taxpayer went on in the course of the immediately ensuing discussion to make it clear that he did not seek the introduction of new evidence and that he considered the record as it stood sufficient to warrant the granting of the credit, if the application of 26(c) (3) and California restrictions on dividend payments were considered. Here was the taxpayer's conscious rejection of its right to introduce evidence.

This interpretation of taxpayer's stand at the hearing is reinforced by its subsequent conduct. The Tax Court on July 30, 1943, entered an order modifying in certain respects an earlier final computation order of December 2, 1942, but did not mention or approve the deficit credit contention. In the further closing recomputations filed, taxpayer did no more than again to suggest its alleged right under Section 26(c) (3). Neither in this recomputation nor by independent motion did it suggest a desire to introduce evidence as to the character of the deficit. The matter was heard on January 5, 1944, and decided adversely to taxpayer on January 24, 1944.

Taxpayer on February 17, 1944, for the first time sought to introduce new proof, consisting of a showing of the factors of the deficit account as being from an operating as distinguished from a capital asset. In other words, taxpayer, throughout nearly a year and throughout protracted proceedings to compute the exact tax due, failed to take the steps toward possible strengthening its evidentiary position which the Tax Court at the May 5, 1943, hearing had suggested were available. Only when that tribunal had at last decided the controversy adversely, after the conscious failure to introduce evidence, did taxpayer seek its introduction.

The Tax Court's refusal at this point to grant a motion for rehearing to permit introduction of the evidence of the character of the deficit account does not constitute an abuse of discretion and must be affirmed. Banker's Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 77 L.Ed. 325; Chiquita Mining Co., Ltd. v. Commissioner of Internal Revenue, 9 Cir., 148 F.2d 306, 310, and cases cited.

C. Taxpayer claims that the Tax Court erred in not deducting the entire receivership expense of the Morrow suit in the year 1936, because that was the year in which the court allowed the claims of the receiver for the years 1931 to 1936, inclusive. The allowance and approval by the court were for expenses for each one of the successive years. In the year 1937 the income taxes for each of these years was in dispute in the Treasury Department. An agreement was reached between the taxpayer and the respondent Commissioner concerning the taxable income of each of the prior years. In this instant proceeding a stipulation was entered into between taxpayer and the Commissioner respecting the agreement of the net income for each of the years 1931 to 1935. Concerning these years it was stipulated that "None of the income impounded by the co-trustees in the matter of Julian v. Schwartz was considered as income to Barnhart-Morrow Consolidated until released to it. That in 1933 there was released for the account of Barnhart-Morrow Consolidated to J. A. Smith, and in years subsequent thereto, pursuant to stipulation filed with the Court in 1933, gas revenues produced by Julian Wells Nos. 1, 2, 3 and 11 *accruing* to Barnhart-Morrow Consolidated, and which gas revenues pursuant to hearing held in Wash-

ington, D. C., on August 13, 1937, were determined to be income to Barnhart-Morrow Consolidated as having been constructively received by it in the year 1933 and in the years subsequent thereto. There was deducted from the income so considered as having been constructively received by the Barnhart-Morrow Consolidated, depreciation on the tangible equipment of the oil wells and other tangible lease equipment, which wells and other lease equipment were then being operated and/or used by the co-trustees in the matter of Julian v. Schwartz. In addition to the depreciation *so* deducted, there was also deducted and allowed business expenses paid and *accrued,* including legal fees and *receivership expenses* of Ralph S. Armour, receiver for the corporation. The receivership expenses *so* allowed, were allowed as deductions in and for the *years* in which they were definitely determined and approved by the Court in said cause of action No. 325061 wherein the said Ralph S. Armour was receiver." (Emphasis supplied.)

■ Taxpayer contends that the last sentence is a stipulation that they were only to be used as deductions for the year 1936. Such a construction makes meaningless the entire portion of the stipulation referring to the tax years 1931 to 1935, inclusive.

■ It is obvious that since the stipulation states that the "accrued" expense deductions are "in addition to the depreciation *so* deducted" for the tax years prior to 1936, these words could not refer solely to 1936. The plurals "expenses so allowed," which "were allowed as deductions in and for the years" must be given effect and not made nugatory in the construction of the sentence. The phrase "were allowed as deductions in and for the years in which they were definitely determined and approved by the court" must mean "determined and approved by the court" as having been *"accrued"* in the respective years. The taxpayer may not blow hot and cold and agree with the Commissioner of Internal Revenue for separate deductions in these several prior years and then claim them as a single deduction in a subsequent year.

■ D. Finally, taxpayer contends that the Tax Court erred in sustaining the Commissioner's determination that taxpayer was not entitled to a $43,151.96 deduction for loss allegedly sustained in quitclaiming an oil well in 1937 to J. A. Smith. This contention is not well founded. The burden once again was on the taxpayer to establish the existence and amount of the deduction. This it failed to discharge. The evidence it introduced was quite insufficient to show the adjusted cost or other tax basis of the well. A tabulation purportedly showing the loss sustained was sought to be introduced in evidence. After objection to this, and after extended colloquy, it was admitted "not for the purpose of showing that it is evidence of the fact that they did sustain that [loss], but to show how we arrived at that figure, our method of accounting."

■ While the figures in the computation of loss, taken as they were from the company's books of account, might be prima facie evidence of the facts they purported to record (Commissioner of Internal Revenue v. Brier Hill Collieries, 6 Cir., 50 F.2d 777; B. F. Edwards, 39 B.T.A. 735, 737) the difficulty here is that they were not admitted and scrutinized on that basis, but only on the more limited one of showing the method followed by the taxpayer's auditor. The Tax Court commented "for that purpose it may be helpful," over the objection of immateriality raised by counsel for the Commissioner.

■ The figures of the loss calculation, had they been admitted without limitation, would undoubtedly have been challenged by the Commissioner. Taxpayer accepted the restriction and chose to introduce no further evidence on the subject. It does not appear that the Tax Court acted arbitrarily in refusing later to open up the case for the taking of further evidence on this question, nor that it erred in concluding that on the basis of the existing record no right to deduction had been proved.

The decision appealed from is affirmed.