PARR et vir v. SCOFIELD, as United States Collector of Internal Revenue
(2 cases)
Civil Actions Nos. 1264, 1265.

United States District Court
W. D. Texas, San Antonio Division.
Jan. 31, 1950.

Robert Lee Bobbitt, San Antonio, Tex., and Muckleroy McDonnold, San Antonio, Tex., for plaintiffs.

H. W. Moursund, United States Attorney, San Antonio, Tex. and Lester L. Gibson, Assistant to the Attorney General, for defendant.

RICE, District Judge.

The above actions which involve identical issues having been consolidated and tried together by the court without a jury by consent of the parties; and the court having examined the pleadings and stipulation of facts, having considered the evidence, having read and considered the briefs filed by the parties and being otherwise fully advised in the premises, makes and enters the following findings of fact and conclusions of law:

Findings of Fact

1. These are suits to recover deficiency taxes and interest duly assessed by the Commissioner of Internal Revenue and paid to the defendant Collector by George B. Parr and Thelma D. Parr, husband and wife, hereinafter referred to as taxpayers, for the year 1944. They seek the recovery of the principal amounts of $93,173.34 in each complaint, or a total of $186,346.68, with interest, according to law. In the alternative they ask judgment for a smaller amount in the event their first claims are denied, both contentions being set out in Finding No. 16.

2. Taxpayers, George B. Parr and Thelma D. Parr, are husband and wife and reside in San Diego, Duval County, Texas. Their income tax returns were and at all times have been filed on the cash basis of accounting.

3. Defendant is and at all times material hereto was the duly commissioned, qualified and acting United States Collector of Internal Revenue for the First Collection District of Texas.

4. During the year 1936, taxpayers acquired as community property a 420 acre oil and gas lease in Webb County, Texas, and in the same year transferred the lease to Hamill and Smith, a partnership. According to the lease and the assignment thereof all of the working interest under the lease passed to Hamill and Smith without reservation. Hamill and Smith proceeded to develop and equip the lease at their own expense without any participation whatever by others therein and as full owners thereof. This development was carried on solely by Hamill and Smith, a partnership, and their complete ownership thereof was not questioned prior to the year 1942. Taxpayers, George B. Parr and/or Thelma D. Parr, at no time had anything to do with the development or the operation of the lease. During the greater part of the period of development the taxpayer, George B. Parr, was confined in El Reno, namely, from August, 1936, until April, 1937. After production was had by Hamill and Smith, a partnership, the taxpayer, George B. Parr, claimed that when he assigned the lease to Hamill and Smith in 1936, he retained therein by oral agreement a one-fourth interest and that by the terms of the agreement Hamill and Smith were to reimburse themselves for Parr's one-fourth of the costs and expenses of his one-fourth of the gross income from the lease and were to pay over to Parr the net income from such interest.

5. Hamill and Smith denied the existence of an agreement with Parr and refused to recognize Parr's alleged interest in the lease. On July 18, 1941, Parr filed suit in the District Court of Webb County, Texas, to recover from Hamill and Smith "(a) undivided ¼ interest in a ⅞ mineral lease on 420 acres of land in Webb County, Texas, with 42 wells thereon, all of them having been completed as producers of oil by Hamill and Smith and (b) one-fourth of the profits realized from such wells."

6. On August 1, 1941, taxpayer, George B. Parr, assigned 45 per cent interest of his alleged interest in the property and accumulated net income to his attorneys.

7. On December 18, 1942, the jury in the above described case returned its verdict awarding Parr and the other plaintiffs in that suit an undivided ¼ interest in the lease and in the equipment thereon and ¼ of the net income from the property

from the date of beginning of operations in 1936 to the date of judgment, i. e., December 23, 1942. Parr and the other plaintiffs were also awarded ¼ of the net profits from date of judgment to December 31, 1943. Hamill and Smith appealed to the Court of Civil Appeals of Texas, which court affirmed the judgment of the trial court. Writ of error was denied by the Supreme Court of Texas and the judgment of the trial court became final in January, 1944.

8. Hamill and Smith thereupon made arrangements to comply with the terms of the judgment and during February, 1944, all funds accrued and due under the judgment, with interest thereon, all of which constituted community income of taxpayers, were paid. Hamill and Smith also paid to taxpayers the net profits applicable to the ¼ interest from January to May, 1944, inclusive, and after June 1, 1944, the proceeds of the interest were paid direct to taxpayers by the pipe line company buying the oil.

9. As a result of the suit taxpayers received the following sums of money from Hamill and Smith during the year 1944:

| | |
|---|---|
| 55% of 25% of net income from the lease | $165,554.30 |
| 55% of 25% of interest allowed on judgment | 22,868.58 |
| Total | 188,422.88 |

10. Hamill and Smith never recognized taxpayer's claim to an interest in the lease prior to January 12, 1944, and for the years prior to 1944 they reported all of the income and expenses of the lease in their income tax returns.

11. At no time prior to 1945 did taxpayers report as income in their returns any portion of the net profits derived from the operation of the lease nor were returns filed prior to 1945 reflecting the existence of an alleged joint venture consisting of taxpayers and Hamill and Smith. In 1945 taxpayers filed separate returns for 1944 reporting their community property income on the cash receipts and disbursement basis. In those returns taxpayers included as taxable income the 1944 income and expenses

attributable to a ¼ interest in the lease but did not include the income received under the judgment in that year. In 1945 taxpayers also filed amended returns for the years 1942 and 1943 and included therein as taxable income ¼ of the net profits derived from the operation of the lease in each of those years. The additional taxes disclosed on the amended returns were paid. All adjustments have been made and these payments are not questioned in these proceedings. Also in 1945 taxpayers filed returns (Form 1065, Partnership Return of Income) in the name of Hamill and Smith and Parr, for the years 1936 to 1943, inclusive. In those returns taxpayers described Hamill and Smith and Parr as joint venturers and reported the net distributable income derived from the operation of the lease in those years as follows:

| Year | Net Income (Loss) | Taxpayer's Share |
|---|---|---|
| 1936 | $( 61,031.23) | $(15,257.81) |
| 1937 | 149,432.96 | 37,358.24 |
| 1938 | 213,042.30 | 53,260.57 |
| 1939 | 112,832.33 | 28,208.08 |
| 1940 | 119,170.04 | 29,792.51 |
| 1941 | 103,629.07 | 21,488.03 |
| 1942 | 73,288.06 | 10,077.11 |
| 1943 | 51,574.35 | 7,091.47 |

The returns filed for the alleged joint venture reported no income subject to tax and taxpayers, individually or otherwise, have never reported for tax any portion of the net income derived from operation of the lease from 1936 to 1941, inclusive.

12. The filing of the foregoing returns in the year 1945 for prior years was at the suggestion of counsel for the taxpayers, and the partnership of Hamill and Smith did not know at the time, and so far as taxpayer and his counsel were advised, did not know at the date of trial that said returns had been filed.

13. Upon examination of taxpayers' 1944 income tax returns the Commissioner of Internal Revenue held that the amount collected on the judgment plus the fair market value of taxpayers' interest in the lease and equipment constituted income realized in the year 1944, the year in which

it was paid, and increased taxpayers' taxable net income $200,076.65, as follows:

Cash received under judgment:

| | | |
|---|---|---|
| Principal | $165,554.30 | |
| Interest | 22,868.58 | |
| | | $188,422.88 |
| Fair market value of lease and equipment | | 36,743.30 |
| Income from litigation | | $225,166.18 |
| Net decrease in depletion and depreciation under lease | | 714.24 |
| *Net decrease in depreciation, general | | 774.59 |
| Total income | | $226,655.01 |
| Less: Amount reported in returns: | | |
| Interest | $ 22,868.60 | |
| *Partnership income | 3,709.76 | 26,578.36 |
| Net addition to income | | 200,076.65 |

*The correctness of this adjustment is not disputed.

14. As a result of the foregoing adjustments the Commissioner of Internal Revenue assessed additional income taxes against taxpayers as follows:

George P. Parr—

| | | |
|---|---|---|
| | Tax | $83,543.26 |
| | Interest | 9,676.14 |
| | Total | $93,219.40 |

Thelma D. Parr—

| | | |
|---|---|---|
| | Tax | $83,678.28 |
| | Interest | 9,691.78 |
| | Total | $93,370.06 |

The amount assessed against George B. Parr was paid, $89,413.24 on August 4, 1947, and $3,806.16 by credit on September 2, 1947. The amount assessed against Thelma D. Parr was paid, $89,561.64 on August 4, 1947, and $3,808.22 by credit on September 2, 1947.

15. On August 19, 1947, George B. Parr filed claim for refund of $93,173.34 and on the same date, Thelma D. Parr, filed claim for refund of $94,323.98. It was alleged by the taxpayers that the lease transaction was a joint venture between the partnership of Hamill and Smith and the taxpayers and that the income was taxable to taxpayers in the year in which earned. In the alternative it was alleged in said claims that taxpayers were entitled to 27½ per cent depletion on the gross income recovered in each suit and that it was illegal to include any amount in 1944 income in respect of the fair market value of the property or if it be proper to include the fair market value of the property in 1944 income, that the fair market value of plaintiffs' interest in the property was only $8,116.00.

16. By registered letter dated May 21, 1948, the Commissioner of Internal Revenue notified taxpayers that their claims for refund were rejected; whereupon in due time these suits were instituted.

17. Taxpayers were not joint adventurers with Hamill and Smith, a partnership, in the development and operation of the 420 acre lease in Webb County, Texas, the fee title to which was transferred to Hamill and Smith in 1936 and remained in them until the termination of litigation, in January, 1944. During this period taxpayers' rights therein consisted of a disputed claim based upon an oral agreement. Taxpayers did not participate in the development and had no part in the management or conduct of the enterprise. Hamill and Smith, at all times, to and including January, 1944, contested all claims to any interest or control in the lease on behalf of the taxpayers. Complete control of all operations of the lease property was in Hamill and Smith, a partnership. A mere joint or undivided interest does not make co-owners joint adventurers; and where the claimed interest is contested the proof must be clear and convincing to overcome the determination of the taxing authority.

18. Throughout the entire period 1941 to January, 1944, the taxpayers' right to the cash payment received in 1944 was being contested, they were on the cash basis of accounting, and the fund was not received actually or constructively until 1944. The litigation terminated in that year; the amount thereof was no longer contested but became definitely fixed and certain, and under any method of accounting was properly taxable at that time. Taxpayers owed no tax on income which was not and might never be received.

102

19. By stipulation (par. XII, Stip. of Facts) it was agreed that the fair market value of the lease and equipment received by the taxpayers in January, 1944, was $36,743.30; and though they contended in their claims for refund and complaints that this item was not properly taxable to them as income in 1944, when the judgment of the state court became final they have offered no evidence or cited authority to refute the *prima facie* determination of the Commissioner of Internal Revenue. When debts or obligations are paid with something other than money, the fair market value of the thing taken is the amount to be included in income.

20. The final question is whether taxpayers were entitled to depletion deduction upon 55% of 25% of net income from the Webb County lease, or on $165,550.30 the cash payment received by them. Though this sum represented the net proceeds of oil produced, it had been reduced to personalty and sold before the taxpayers' interest therein became vested; and though there is evidence to that effect, depletion undoubtedly had already been taken by Hamill and Smith, the fee owners, when received. Taxpayers did not acquire a depletable mineral interest by virtue of said payment, but a right to receive a sum of money with regard to which no principle of depletion allowance applied.

From all of which the Court makes the following:

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter.

2. Taxpayers, or either of them, were at no time after the transfer of the Webb County lease to Hamill and Smith, a partnership, and during the period 1936 to January, 1944, inclusive, joint adventurers in said partnership.

3. The income upon which the taxes in question were assessed and collected was at all times contingent and uncertain until the year 1944, at which time it became the uncontested income of the taxpayers, definitely fixed and certain, and was properly taxable in that year.

4. Taxpayers were not entitled to depletion deduction on account of the receipt of 55% of 25% of the accumulated net income from the Webb County lease, acquired by Hamill and Smith, prior to termination of litigation.

5. The determination of the Commissioner of Internal Revenue resulting in the deficiency assessments was in all respects correct and the collection of the deficiency tax and interest by the defendant was proper.

6. Taxpayers have failed to establish a claim upon which relief can be granted in these suits.

7. Taxpayers are not entitled to any recovery, and defendant is entitled to judgment dismissing these suits with prejudice, for costs herein to be taxed by the Clerk.