THE ESTATE OF THOMAS E. ARNETT, DECEASED, THOMAS H. CRAWFORD, JR., ADMINISTRATOR C. T. A. AND ESTATE OF CLARA BELLE ARNETT, DECEASED, THOMAS H. CRAWFORD, JR., ADMINISTRATOR DBN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58343. Filed October 31, 1958.

*Edwin M. Slote, Esq.*, for the petitioners.
*Robert O. Rogers, Esq.*, for the respondent.

322

324

328

OPINION.

KERN, *Judge:* The jurisdictional question raised by the motion to dismiss made by petitioners' counsel on the day when this case was finally and definitely set for trial has been pressed by petitioners again on brief. It may be disposed of without extended discussion. To paraphrase the language used in *Edwin W. Eisendrath et al., Executors,* 28 B. T. A. 744, 755, 756, since the party who filed the petition herein on behalf of the estate of Thomas E. Arnett and the estate of Clara Belle Arnett was the duly appointed, qualified, and acting administrator of those estates, we conclude that we have jurisdiction of the proceeding brought by him. As administrator he stands in the place of the deceased taxpayers and in that capacity is authorized by section 272 of the Internal Revenue Code of 1939 to file a petition with this Court. The order of the State court which we have quoted in full very carefully refrains from deciding that the administrator was without authority to file the petition herein. It merely recites "[t]hat there were no orders entered * * * in * * * the Estates * * * authorizing the Administrator to file the said Petition." It is our opinion that his authority was derived from his status as administrator and from the cited section of the Internal Revenue Code, and did not depend for its existence upon any specific order of the State court instructing him, as administrator, to file this particular petition. Therefore, the statement in the verification to the effect that the person signing the petition is the duly appointed, qualified, and acting administrator of the estates of the deceased taxpayers is by clear implication a statement that he has the authority to file the petition and satisfies Rule 7 of our Rules of Practice. Even if it were technically deficient (which it is not), in the state of the pleadings existing when the motion herein considered was made, it would not be a defect which would affect our jurisdiction. *Gibson Amusement Co.,* 22 B. T. A. 1212. The case of *Soren S. Hoj,* 26 T. C. 1074, which deals with another part of Rule 7 relating to a verification of a petition by an agent when the petitioner is outside the United States, is not in point.

We therefore reaffirm our action at the trial of this case in denying petitioners' motion to dismiss.

It is obvious that the petitioners had no unrestricted right of dismissal after the filing of respondent's amended answer. *Perkins-Barnes Construction Co.,* 9 T. C. 388.

Petitioners have introduced no evidence relating to the issue which has to do with the deficiency originally determined by respondent. Since they have the burden of proof on this issue we decide it against them.

The other issues arise from new matter pleaded in respondent's amended answer. Under Rule 32 of our Rules of Practice, the burden of proof as to these issues is on respondent.

In general, those issues derive from a lawsuit instituted by Arnett in the United States District Court for the Western District of Kentucky. It is important to know the nature of that action. The pleadings and entire record therein are not in evidence. It is stipulated that it was a suit "asserting ownership of * * * [a] tract of land and requesting an accounting for all oil, gas and other petroleum products removed from the land by the persons claiming under the lease executed by W. W. and Anna Brackett." There is in evidence an "Interlocutory Order and Judgment" of the District Court dated November 22, 1948, in which it is adjudged and decreed *inter alia* "[t]hat the plaintiff, Thomas E. Arnett, is now and has been since January 7, 1915, the owner and is entitled to possession of the oil and gas * * * in" the tract of land involved in the litigation; that the claims of the defendants in that suit were invalid and were thereby canceled and removed as a cloud on the plaintiff's title; and that the defendants therein make "a full and complete accounting * * * of all oil, gas, and other petroleum products * * * produced, and/or sold by them * * *, showing the fair market value thereof * * *, and the amounts received by them therefor, so that the court can determine therefrom the issue as to the amount of damages, if any, that should be awarded the plaintiff herein." A memorandum of the District Court dated October 8, 1948, and reported in 88 F. Supp. 343, sums up (on page 349) the decision of that court as follows:

The plaintiff is entitled to the quiet possession of the minerals. There should be an accounting made to him of all moneys derived from the sale of minerals to which he would have been entitled had he been left to the proper enjoyment of his estate.

We conclude that Arnett had two purposes in instituting that litigation: (1) To quiet title as to the mineral deposits in a certain tract of land, which mineral deposits he had owned since 1915 and as to which he had record title, and (2) to obtain a money judgment from trespassers representing income derived by them from their exploitation of the mineral deposits owned by him; and that neither purpose was predominant.

The first of these issues is whether Arnett was entitled to the percentage depletion deduction provided for by sections 23 (m) and 114 (b) (3) of the Internal Revenue Code of 1939 [2] in connection with the

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(m) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this subsection for subsequent taxable years shall be based upon such

amounts recovered by him at the time and in the manner outlined in our findings from trespassers upon his mineral property.

In our opinion the general rule is that when the owner of or holder of a capital investment in oil and gas in place (which ownership vested or capital investment was made prior to any litigation) receives as the result of litigation a monetary award against a person wrongfully extracting such oil or gas representing the proceeds from its sale, whether in the form of damages or otherwise, the owner is entitled to the percentage depletion deduction provided by statute calculated upon such receipts. See *Thomas W. Blake, Jr.*, 20 T. C. 721.

The cases of *Parr* v. *Scofield*, 89 F. Supp. 98, affd. 185 F. 2d 535, and *Massey* v. *Commissioner*, 143 F. 2d 429, relied upon herein by respondent, present exceptional circumstances which take them outside the general rule. The *Massey* case involved the availability of percentage depletion to an attorney whose interest was acquired pursuant to a contingent fee contract only upon the successful termination of litigation and at a time when the property to which his interest attached was in the form of money. The *Parr* case, upon which respondent lays the greater stress, involved a situation where the taxpayer had conveyed his ownership to the gas and oil but succeeded in subsequent litigation against the grantees in establishing an equitable interest in the "net profit" resulting from the operation of the property. Neither of those cases involved the situation here present in which the owner of the oil and gas recovers an award from trespassers representing the proceeds of the oil and gas wrongfully taken and to which he was entitled by reason of an ownership or investment long antedating the litigation in which the award was given.[3]

---

revised estimate. In the case of leases the deductions shall be equitably apportioned between the lessor and lessee. * * *

For percentage depletion allowable under this subsection, see section 114 (b), (3) and (4).
SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.
   (b) BASIS FOR DEPLETION.—

      *        *        *        *        *        *        *

    (3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

   [3] It should be noted that the authority of the *Parr* case even as to its peculiar facts has been weakened by the addition of section 1305 (b) to the Internal Revenue Code of 1954 (H. Rept. 232, 85th Cong., 1st Sess. (1957), 71 Stat. 413), permitting a depletion deduction to a taxpayer obtaining damages for breach of contract or fiduciary duty insofar as they represent taxpayer's share of income from the operation of property. In S. Rept. No. 836, 85th Cong., 1st Sess. (1957) p. 4, the Finance Committee after noting the *Parr* case states that section 1305 (b) "is *intended to make it clear* that for the purpose of computing * * * deductions for depletion * * * the award is to have the same character as the income which would have been received or accrued except for the breach of contract or duty." (Emphasis supplied.) See also H. Rept. No. 870, 85th Cong., 1st Sess. (1957), p. 2.

The depletion deduction available for oil and gas is for the benefit of "the taxpayer [who] has a capital investment in the oil in place which is necessarily reduced as the oil is extracted." *Kirby Petroleum Co.* v. *Commissioner*, 326 U. S. 599, 603. Whether it is extracted and sold by his consent or unlawfully by a trespasser is irrelevant provided that he receives the proceeds. We also consider it to be irrelevant that the gross income from the extraction is paid to the taxpayer involuntarily as the result of litigation and in the form of damages after an accounting, rather than voluntarily pursuant to contract. We conclude that Arnett was entitled to a percentage depletion allowance with regard to the gross income received by him and resulting from the operation of oil and gas wells exploiting the mineral rights owned by him and in which he had a capital investment, even though such operation and exploitation were by trespassers and such gross income was received by him in the form of money damages decreed by a court in litigation seeking an accounting from such trespassers. *A fortiori*, Arnett was entitled to a percentage depletion allowance with regard to gross income received by him and resulting from the operation of the oil and gas wells by the conservators appointed by the District Court. Respondent's argument on this point is to the effect that the gross income of Arnett here in question was in the form of money received upon a judgment award, that the oil from the sale of which the money was derived was no longer in place when the gross income was realized by Arnett, and therefore such gross income cannot be from oil and gas in place within the meaning of section 114 (b) (3). This argument is without merit in principle and is not supported by any pertinent authority.

Having decided the issue stated above in favor of petitioners, it is necessary to consider respondent's alternative contention that the decedents' gross income for depletion purposes for the period of the trespassers' operation should not in any event include development and operating expenses paid by the trespassers. It is stipulated that the gross oil production, less severance taxes, during that period amounted to $401,071.60, that the District Court decided that the defendants in the litigation before it were entitled as innocent trespassers to "a reasonable allowance for their expenditures" in an amount ultimately determined to be $94,827.17, representing cost of wells and equipment, cost of drilling operations, and supervision charges, and that after the subtraction of "expenditures awarded defendants" and the addition of "discount earned," the "net amount of award" was $306,568.55.

Respondent concedes that Arnett's gross income for the purpose of computing percentage depletion under section 114 (b) should include all expenses paid by the conservators during their operation of the property. See *Barnhart-Morrow Consolidated*, 47 B. T. A. 590, 603–

605, affd. 150 F. 2d 285. However, respondent contends that even though decedents are entitled to a percentage depletion deduction (as we have held), there should not be included in their gross income for the purpose of computing such a deduction any amounts representing "the expenses incurred and paid by Delta [the trespasser] nor * * * depreciation sustained on the equipment while Delta was controlling operations" since "[t]here is obviously a substantial difference between a situation where an adverse party operates the lease for his own benefit, taking a current deduction therefor,[4] and one where a trustee is operating the lease for the benefit of the winning litigant," citing *Helvering* v. *Mountain Producers Corporation*, 303 U. S. 376.

The cited case did not involve expenses of production paid by a trespasser and allowed to it as an "innocent trespasser" by a court in a suit for accounting, but involved a situation where the purchaser of oil agreed to develop and operate the oil property at its own expense and to make payments to the owner of the property in amounts calculated by subtracting such expenses. In that case the Court concluded that the owner of the property had agreed by contract that his gross income was to be in amounts reflecting the subtraction of such expenses and that the expenses were paid by the purchaser on its own account and for its own benefit and not for the benefit of the owner.

In the instant case there was no such contract by which Arnett can be said to have agreed that his gross income from the property was to be the amount of the proceeds of the oil extracted minus the expenses of development and operation, and the amount of such expenditures cannot be said to be for the benefit of the trespasser since as trespasser it was not entitled to benefit by its unlawful operations and developments and, as a result of the litigation, it did not so benefit. Its recoupment of costs of development and operation was allowed to it by the court not as a benefit but to prevent its being damaged as a result of expenditures made by it as an "innocent trespasser" which resulted in benefit to Arnett.

In our opinion the expenditures here in question come within the ambit of cases such as *Barnhart-Morrow Consolidated*, *supra*, rather than that of *Helvering* v. *Mountain Producers Corporation*, *supra*. They "were made out of production of oil and gas for the benefit of petitioner" (*Barnhart-Morrow Consolidated*, *supra* at 605). We conclude that the gross income of decedents upon which percentage depletion was allowable should not be reduced by the amount of such expenditures.

The next alternative issue raised by respondent's amended answer to be considered is whether all or any part of the legal expenses paid

---

[4] Since respondent has the burden of proof on this issue and there is no evidence that the trespasser took "a current deduction therefor," respondent's statement to this effect on brief cannot be considered as a part of his argument.

by Arnett incident to the litigation which we have characterized heretofore in this opinion is deductible under section 23 (a) (2) of the Internal Revenue Code of 1939.

Legal expenses incident to the quieting of title are not deductible. Legal expenses incident to the collection of income are deductible. In the instant case we have concluded that Arnett had two purposes in instituting the litigation here in question: (1) To quiet title and (2) to collect income; and that neither purpose was predominant. Cf. *Midco Oil Corporation*, 20 T. C. 587, 591, 592. Under the circumstances here present it is proper to apportion the legal expenses paid by Arnett incident to this litigation by capitalizing the portion allocable to the quieting of title and by allowing as a deduction the portion allocable to the collection of income. *Agnes Pyne Coke*, 17 T. C. 403, affd. 201 F. 2d 742; *Daniel S. W. Kelly*, 23 T. C. 682, affd. 228 F. 2d 512. Upon the facts presented (and we reiterate that respondent has the burden of proof on this issue), it is impossible to determine with exactness what portion of the total fees paid is allocable to the quieting of title and what portion is allocable to the collection of income. Under such circumstances we have held in *James Petroleum Corporation*, 24 T. C. 509, affirmed on another issue 238 F. 2d 678, and in *Estate of A. P. Steckel*, 26 T. C. 600, that we may approximate the allocation and apportionment under the principle of *Cohan* v. *Commissioner*, 39 F. 2d 540. Accordingly, we have concluded that one-half of the attorneys' fees is properly deductible by decedents.

Finally we consider the issue involving the question whether interest upon the judgment against the trespassers and discounts earned by the trespassers and conservators should be included in the gross income upon which the percentage depletion deduction is calculated.

As this Court held in *Island Creek Coal Co.*, 30 T. C. 370, with regard to "gross income" upon which the percentage depletion is to be computed, "[w]e think it is clear that 'gross income from the property' has reference only to the income attributable to those mining operations defined by the statute."

Miscellaneous items of income from sources or operations or transactions only indirectly related to the direct extraction and sale operations are not includible in the "gross income" or "net income" base upon which the deduction is calculated and limited. Interest upon the amount of the judgment against the innocent trespassers is includible in gross income but not includible in "gross income from the property" for the purpose of the computation of the deduction. The purpose of the deduction as discussed above should make the exclusion of such an item from the base obvious. The amount of the deduction theoretically depends upon the degree to which the wasting asset is depleted. The amount of such depletion and the consequent deduction cannot be

made to depend on the time a judgment debtor delays in meeting his obligation. The interest amount is a miscellaneous item of income not "attributable to those mining operations defined by the statute," and not "gross income from the oil and gas." See *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. The same reasoning would deny the inclusion of the interest on the judgment in the "net income of the taxpayer from the property" for the purpose of fixing the 50 per cent limitation on the deduction.

The item of "Discounts Earned" which was also included in the "gross income" base and "net income" limitation base is also such a miscellaneous item of income. It was isolated from the "Net Yield—Oil Production" entry by an accountant making a statement of operations of the mineral interest and separately stated, along with the interest item, as "Other Income." It is just such other income which should be excluded from the percentage depletion computation.

*Decision will be entered under Rule 50.*