Joseph **DRISCOLL**, as President of Local 866, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, on its own behalf and on behalf of W. H. Hunt and all like situated members of Local 866, IBT, Plaintiff,

v.

**EXXON CORPORATION**, Defendant.

No. 72 Civ. 2742 (CHT).

United States District Court,
S. D. New York.
Oct. 18, 1973.

Guazzo, Silagi & Craner, New York City (Caesar C. Guazzo, New York City, of counsel), for plaintiffs.

Kelley, Drye, Warren, Clark, Carr & Ellis, New York City (Frederick T. Shea, Ezra I. Bialik, New York City, of counsel), for defendant.

## MEMORANDUM

TENNEY, District Judge.

The instant case originated from a labor dispute in 1965 between defendant Exxon Corporation (hereinafter "Exxon") (formerly Humble Oil & Refining Company) and plaintiff (hereinafter "Union") concerning whether employees laid off by Exxon were required to repay money received as severance allowances as a condition of being recalled to work seven days later. After a series of arbitration, district court and appellate court proceedings, it was determined that Exxon had acted in violation of a collective bargaining agreement between itself and the Union when it required the return of the severance allowances and that Exxon was obligated to repay to all affected employees whatever sums they had returned plus interest or similar expenses these employees incurred in connection with returning the severance pay.

The Union later instituted the present action in which it sought a judgment directing Exxon to pay (1) specified amounts to each aggrieved employee, (2)

statutory interest, (3) attorney's fees and costs of litigation, and (4) an amount allegedly representing a deficiency between the monies returned to Exxon and the monies repaid to the employees as a result of the earlier litigation. This Court granted a motion for summary judgment for defendant Exxon as to the issues of the specific amounts payable to each aggrieved employee, statutory interest, attorney's fees and costs of litigation. However, the motion was continued solely as to the issue of the deficiency in the repayments made to the employees. *See* Driscoll v. Humble Oil & Refining Co., 60 F.R.D. 230 (S.D.N.Y. May 23, 1973). The alleged deficiency in repayment is attributable to the fact that the applicable withholding tax rates at the time of the repayments in 1971 were higher than those in effect at the time of the original severance allowances in 1965. Thus, the only issue remaining to be decided is whether Exxon, upon repayment of the severance allowances in 1971, properly withheld taxes at the rates then in effect rather than at the rates in effect during 1965.

■ It is clear that the severance payments made by Exxon in 1965 constituted "wages" within the meaning of § 3401(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 1 et seq. (1970) (hereinafter "Code"). *See* Treas.Reg. § 31.3401(a)–1(b)(4) (providing that dismissal payments constitute wages). The Court notes preliminarily that the return of these payments to Exxon, the subsequent arbitration and litigation regarding the propriety of that requirement and the ultimate repayment of the money to the employees in 1971 did not change the character of these payments to something other than wages subject to withholding tax. The Internal Revenue Service has ruled that amounts paid by employers after an action brought under the Fair Labor Standards Act on account of unpaid minimum wages and unpaid overtime compensation constitute wages for the purposes of income tax withholding. Rev.Rul. 55–203, 1955–1 Cum.Bull. 114. It has similarly ruled

that a payment made by an employer to an employee who has been reinstated and granted back pay for lost time pursuant to an order of the National Labor Relations Board constitutes wages for purposes of income tax withholding. Rev.Rul. 57–55, 1957–1 Cum.Bull. 304. Accordingly, it seems clear that these repayments, made as a result of the litigation previously referred to, constitute "wages" subject to withholding taxes under § 3402(a) of the Code.

■ The Union apparently concedes that the repayments are subject to withholding taxes. It contends, however, that the employees realized income when they initially received the severance allowances in 1965. Consequently, it is argued that the withholding rates then in effect are controlling. Counsel for the Union rely upon § 61 of the Code to support the contention that cash basis taxpayers (the employees) realize income when they actually or constructively receive payment. It is true that severance pay is included in gross income as defined by § 61. *See* Treas.Reg. § 1.-61–2(a)(1). However, § 61 has no bearing on realization of income. The Union contends that income is realized when it is actually or constructively received. But income is not actually or constructively received until the taxpayer has an unconditional claim of right to it and the amount is available to him without restriction or is subject to his control. *See* 2 Mertens, The Law of Federal Income Taxation, § 12.39 at 176 (1967 Rev.) and cases cited therein.

■ For those employees who returned to work when recalled, the return of their severance allowances only seven days after receiving them had the effect of transforming the original payments into a conditional right to the payments subject to the outcome of the arbitration and litigation to follow.

> "Income accrues to a taxpayer when there arises in his favor a fixed and unconditional right to receive it. . . . This principle applies whether the income arises out of an

ordinary claim or out of a claim which is the subject of litigation. Conditional or contingent claims are taxed when they are shorn of their conditional or contingent quality and become unconditional and absolute." 2 Mertens, The Law of Federal Income Taxation, § 12.65 at 232 (1967 Rev.). The employees had no fixed and unconditional right to receive the payments until the termination of the arbitration and litigation was resolved and repayment was made in 1971, and this income was in the form of "wages" subject to withholding tax at the rates then in effect. *See* Boston Elevated Railway Co. v. Commissioner, 16 T.C. 1084 (1951), aff'd, 196 F.2d 923 (1st Cir. 1952) (where amounts due but not paid because of a legal challenge were held to constitute taxable income only when the action was discontinued); Parr v. Scofield, 89 F.Supp. 98 (W.D.Tex.1950), aff'd, 185 F.2d 535 (5th Cir. 1950), cert. denied, 340 U.S. 951, 71 S.Ct. 571, 95 L. Ed. 686 (1951) (where a claim of a right to income from an interest in an oil and gas lease was not taxable until after the conclusion of litigation resulting in a judgment in taxpayers' favor); H. Liebes & Co. v. Commissioner, 90 F. 2d 932 (9th Cir. 1937); 2 Mertens, The Law of Federal Income Taxation, § 12.-40 at 177–78 (1967 Rev.).

Finally, the plaintiff's suggestion that Exxon received undeserved benefits by operation of § 1341 of the Code must be rejected as irrelevant. Section 1341 provides rules for computation of tax where a taxpayer is entitled to a deduction as the result of restoring an amount included in gross income for a prior taxable year because it appeared that the taxpayer had an unrestricted right to such amount. There is no indication in the record that Exxon has, or indeed could have, so treated the amounts paid to the employees. There was no showing to this Court that Exxon included the amounts returned to it by the employees in 1965 as income to the corporation. It is this Court's view that the return of those sums was nothing more than a nullification of the payments made by Exxon seven days earlier and had no effect on the company's gross income for the taxable year. Exxon did not profit from the alleged wrongful act of requiring return of the severance payments in 1965 as the plaintiff has asserted. It was merely acting in accordance with the provisions of the Internal Revenue Code by withholding the tax for which it was liable under § 3403.

Accordingly, summary judgment on this issue is granted in favor of the defendant Exxon Corporation.

Settle order on five (5) days notice.