A. LeRoy Nelson and Pearl E. Nelson v. Commissioner.
Nelson v. Commissioner
Docket No. 1792-69.
United States Tax Court
T.C. Memo 1971-327; 1971 Tax Ct. Memo LEXIS 3; 30 T.C.M. (CCH) 1423; T.C.M. (RIA) 71327; December 28, 1971, Filed *3 H. Lioyd Nearing, for the respondent. RAUM
Memorandum Opinion RAUM, Judge: The Commissioner determined a deficiency of $4,532.53 in petitioners' income tax for the calendar year 1965. At issue is whether expenditures in the aggregate amount of $22,000 made by petitioner A. LeRoy Nelson following the sale of all of his stock in a wholly owned corporation were ordinary and necessary business expenses or adjustments of the price of the stock which reduced the capital gain he had realized on the sale. The facts have been stipulated. 1424 Petitioners are husband and wife. They filed a joint Federal income tax return for 1965 with the district director of internal revenue at Los Angeles, California, and resided in Hollywood, California, when the petition herein was filed. A. LeRoy Nelson ("Nelson" or "petitioner") was the sole shareholder of Hollywood Finance Company ("HFC"), a California corporation which he had organized on May 29, 1958. HFC was in the business of making loans and purchasing installment sales contracts. Petitioner was the sole stockholder of HFC and was also president and a director of the corporation. On June 16, 1965, petitioner sold all *4 of his stock in HFC to State Loan and Finance Corporation ("State Loan") for $177,750, thereby realizing a capital gain in the amount of $102,178.88. At the same time he ceased being president and director of HFC. In the written sales agreement he warranted, inter alia, that all of HFC's loans outstanding as of June 7, 1965, were validly made and that there were no defenses against any of such loans. In the event of the breach of these warranties, petitioner agreed "to reimburse Purchaser [State Loan] for the full amount of its loss sustained thereby." The agreement also required Nelson to reimburse State Loan for the full amount of any claims against HFC arising out of transactions which occurred prior to the close of business on June 8, 1965, and which were not reflected on the Balance Sheet, if either HFC or State Loan was subsequently required to satisfy such claims. To be included in the reimbursement were court costs or attorneys fees which either HFC or State Loan was required to pay in the defense of such claims. On September 20, 1965, State Loan informed Nelson that the California Commissioner of Corporations (the "Corporations Commissioner") threatened to sue HFC for *5 alleged violations of California's Personal Property Broker Law. State Loan declared that the defense of such a lawsuit would be costly and that numerous loans made by HFC were in danger of being declared void. Many of such loans had been made during the period for which Nelson was contingently liable to State Loan pursuant to the agreement of June 16, 1965. On December 15, 1965, petitioner and State Loan entered into a second written agreement which provided, in part, as follows: WHEREAS, State Loan now contends that Nelson is liable to it * * * [pursuant to the warranties made in the] agreement of June 16, 1965 for any losses which may be sustained by it arising out of the * * * contentions of the Corporation Commissioner as to loans made prior to the date it took over the business of Hollywood Finance Company, whether now known or hereafter discovered to be in the categories questioned by said Commissioner, and WHEREAS, under the terms of said agreement of June 16, 1965, State Loan may or could hereafter make claims against Nelson, similar to or different from the claim now asserted against him, and the parties now being desirous of finally determining, settling and compromising *6 any and all claims of whatever kind or nature and whether now known or unknown, which State Loan could make, under the terms of said agreement, NOW, THEREFORE, in consideration of the promises, covenants, conditions and agreements hereinafter set forth, the parties agree, as follows: 1. Nelson agrees to pay to State Loan forthwith upon the execution of this agreement, the sum of TWENTY THOUSAND DOLLARS ($20,000.00), receipt of which is hereby acknowledged. 2. In consideration of payment of said sum, the parties agree that all the provisions of paragraphs 4, 5, and 10, of said agreement of June 16, 1965 [which included petitioner's warranties with respect to HFC's loans and his agreements to reimburse State Loan], are hereby deleted from said agreement and are of no legal force or effect and are not binding upon nor the obligation of Nelson, his heirs, executors, administrators, successors and assigns. * * * 3. In further consideration of the payment of said sum, State Loan hereby releases Nelson, his heirs, executors, administrators, successors and assigns, from any and all claims now arising out of and/or which may hereafter arise out of any loans or contracts made by Hollywood *7 Finance Company on or price to June 16, 1965 made or claimed to have been made in contravention of the provisions of the Personal property Brokers Act of the State of California * * *, regardless of who has asserted or may hereafter assert such claims, and State Loan further agrees to defend Nelson, his heirs, executors, administrators, successors and assigns from and against any such claims and to save and hold him 1425 harmless from payment of such claims and all reasonable costs of defending himself therefrom, including attorneys fees. 4. In further consideration of the payment of said sum, State Loan hereby releases Nelson, his heirs, executors, administrators, successors and assigns, from any and all claims of whatever kind or nature, whether now known or unknown, which have arisen or which may hereafter arise which can or may be now or hereafter asserted, arising out of or connected with the sale by Nelson of the Capital Stock and business of Hollywood Finance Company to State Loan and to save and hold him harmless from payment of such claims and all reasonable costs of defending himself therefrom, including attorneys fees. The Corporations Commissioner instituted a suit *8 against HFC, among others, on February 18, 1966. Petitioner was not named as a defendant. The stipulated judgment eventually entered into in that suit, although not containing any admission of any violations of law, restrained HFC from collecting 82 loans, of which 48 had been made while Nelson had been an officer of the corporation. At the time petitioner had first heard about the impending lawsuit by the Corporations Commissioner, he was president and director of Southern California Loan Company ("Southern California"), a corporation he had formed after selling his interest in HFC. Southern California had applied to the Corporations Commissioner for a Personal Property Broker License on August 25, 1965. On September 23, 1965, the Corporations Commissioner informed Nelson that the application would be denied because of alleged violations of the Personal Property Broker Law while he had been president of HFC. To avoid having the application denied, petitioner withdrew it. The application was resubmitted in August, 1966, but it was denied in November, 1966, by the Corporations Commissioner, who concluded that he was - Unable to make a finding that the experience, character and general *9 fitness of A. LeRoy Nelson as a director, president, treasurer, general manager, sole person authorized to make loans, and sole proposed shareholder of applicant is such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly and efficiently within the purposes set forth in Division 9 of the Financial Code, which finding is required by Section 22206 of the Financial Code before the Commissioner shall issue and deliver a license to the applicant to engage in the personal property broker business. Petitioner incurred expenses of $2,000 for legal services performed between September 20, 1965, and December 15, 1965. It is stipulated that these services entailed "representation of petitioners' interest before the California Corporations Commissioner relating to the loans of Hollywood Finance Company that were about to be voided and the negotiation and drafting of the agreement releasing petitioner Mr. Nelson of liability on these loans." On petitioners' joint return for 1965 a deduction in the amount of $22,000 was claimed as "Legal and professional fees". This deduction, which petitioner seeks to defend as an ordinary *10 and necessary business expense, consists of Nelson's $20,000 payment to State Loan and the foregoing $2,000 fee for legal services. The Commissioner determined that the entire $22,000 was capital in nature, that it merely reduced the amount of capital gain realized upon the sale of the HFC stock, and that it therefore did not qualify as a business expense that is deductible from ordinary income. We hold that his determination must be approved. 1. The $20,000 payment to State Loan. As we view the stipulated materials, petitioner had covenanted in his June 16, 1965, agreement of sale that there were no defenses against HFC's loans and had agreed to reimburse the purchaser for any loss that it might sustain in the event of a breach of this warranty. And when it was discovered that there were defenses against the loans petitioner paid $20,000 to the purchaser to be relieved of all further liability under the contract. He had previously realized a gain of $102,178.88 upon the sale of his HFC stock, and this $20,000 payment merely reduced the amount of that gain. This is not a case of a business expense like Kornhauser v. United States, 276 U.S. 145, upon which petitioner *11 heavily relies. Nor is the claimed deduction allowable as a "bad debt", as is confusingly argued by petitioner. Rather, the $20,000 payment was an outgrowth of the sale of petitioner's stock, and it is merely a capital charge or an offset against the proceeds of that sale under the principles applied in Arrowsmith v. Commissioner, 344 U.S. 6, and the decisions which have followed it. Estate of McGlothlin v. Commissioner, 370 F. 2d 729, 732 (C.A. 5), affirming 44 T.C. 611; John E. Turco, 52 T.C. 631, 1426 634-635; Rees Blow Pipe Manufacturing Co., 41 T.C. 598, 604, affirmed per curiam, 342 F. 2d 990 (C.A. 9); Estate of James M. Shannonhouse, 21 T.C. 422, 424; cf. Duveen Brothers, Inc., 17 T.C. 124, 128-129, affirmed per curiam, 197 F. 2d 118 (C.A. 2), certiorari denied, 344 U.S. 884, rehearing denied, 344 U.S. 910. [1]
In an effort to support his position, petitioner refers repeatedly to his activities as a corporate officer [2] engaged in the business of *12 making loans and to his efforts to obtain a license for his Southern California Loan Company. The point is, however, that the $20,000 was paid to relieve him of his liabilities under the contract of sale of his HFC stock, and these other considerations, even if otherwise relevant, [3] could not convert a capital payment into a deductible expense. 2. The $2,000 payment for legal services. The $2,000 payment is so closely related to and identified with the $20,000 payment that it must be treated in like manner. The parties have stipulated that the services were rendered for the representation of petitioner's interest before the Corporations Commissioner relating to HFC loans that were about to be voided and the negotiation and drafting of the agreement "releasing * * * [him] of liability on these loans. *13 " Plainly, this payment is of the same character as the $20,000 payment to which it relates, and must also be treated as a capital expenditure rather than a business expense. Rees Blow Pipe Manufacturing Co., supra, 41 T.C. at 604, affirmed per curiam, 342 F. 2d 990 (C.A. 9); Estate of James M. Shannonhouse, supra, 21 T.C. at 424; [4] cf. Third National Bank in Nashville v. United States, 427 F. 2d 343, 344 (C.A. 6); Anchor Coupling Company v. United States, 427 F. 2d 429, 432-433, certiorari denied 401 U.S. 908; Stass Reed, 55 T.C. 32, 40. Decision will be entered for the respondent. Footnotes
1. See also Lawrence J. Pierce, 14 T.C.M. 964↩, 965.
2. He also states on brief that he was engaged individually in the business of making loans, but this is not shown in the record, and his brief in a number of other instances relies on alleged facts that are not contained in the record.↩
3. Cf. Deputy v. DuPont, 308 U.S. 488; Dalton v. Bowers, 287 U.S. 404; Jean U. Koree, 40 T.C. 961↩.
4. See also Lawrence J. Pierce, supra, n. 1. 14 T.C.M. at 965↩.