RALPH K. B. CLAY and SUSAN K. CLAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clay v. Commissioner
Docket No. 16779-79.
United States Tax Court
T.C. Memo 1981-375; 1981 Tax Ct. Memo LEXIS 367; 42 T.C.M. (CCH) 456; T.C.M. (RIA) 81375; July 23, 1981
Leland H. Dibble, Jr., for the petitioners. Peter D. Bakutes, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for the calendar year 1976 in the amount of $ 11,853. The issues for decision are: (1) whether and to what extent amounts paid by petitioners in 1976 to indemnify the purchasers of petitioners' business, the proceeds *368 of which were properly reported as being from the sale of a capital asset in 1973, are allowable as a capital loss or an ordinary loss; and (2) whether legal fees paid to defend against a claim for indemnity arising out of a contract of sale for the capital stock of a business are allowable as a capital loss or an ordinary deduction. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Las Vegas, Nevada, at the time the petition herein was filed. They timely filed a joint Federal income tax return for the calendar year 1976 with the Internal Revenue Service Center at Fresno, California. Empire Vending Company, Inc. (hereinafter Empire), was incorporated under the laws of California on October 7, 1968. Its principal business was the sale of food and beverages from vending machines. From January 1, 1969 through December 10, 1973, Empire was a duly electing "small business corporation" (subchapter S). See sec. 1371 et seq. [1] On December 10, 1973, the petitioners owned approximately 78 percent of the outstanding stock of Empire. The remaining 22 percent was owned by Edna M. Kendall (hereinafter Kendall), *369 the mother of Susan K. Clay. On December 10, 1973, the petitioners and Kendall entered into an agreement with Billy Dayton, Inc. (hereinafter Dayton), [2] a California corporation, for the sale of the former's stock in Empire. The agreement provided in pertinent part: STOCK ACQUISITION AGREEMENT This AGREEMENT is made on December 10, 1973, by and between RALPH K. B. CLAY, SUSAN K. CLAY and EDNA M. KENDALL, (hereinafter referred to collectively as "SELLERS"), and BILLY DAYTON, INC., a California corporation (hereinafter referred to as "BUYER"). 1. PURCHASE PRICE
The purchase price to be paid by BUYER to SELLERS for said 11,330 shares of no par value common stock of COMPANY shall be an aggregate purchase price of SIXTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($ 67,500.00). *370 3. WARRANTIES AND REPRESENTATIONS OF SELLERS
(f) Attached hereto * * * are unaudited financial statements of COMPANY for the eight (8) months ending August 31, 1973. Said unaudited financial statements truly, correctly and completely set forth the financial condition of COMPANY as of their respective dates; * * * [and] correctly reflect all operations and transactions and all assets and liabilities [of COMPANY]. * * * 7. INDEMNIFICATION
Without any way limiting or diminishing the warranties, representations or agreements herein contained or the rights or remedies available to BUYER for the breach hereof, SELLERS RALPH K. B. CLAY and SUSAN K. CLAY hereby jointly and severally agree to indemnify and hold BUYER harmless from and against any and all debts, undisclosed liabilities * * * or other loss resulting directly or indirectly from the assertation against COMPANY of claims * * * arising before the closing date unless fully disclosed by SELLERS. 10. ARBITRATION
In the event of any dispute between the parties hereto for any reason, the matter shall be submitted to arbitration in accordance with the rules of the American Arbitration Association. All *371 arbitration proceedings shall be conducted at Santa Rosa, California, and the award or finding thereof shall be final and binding on the parties hereto and the prevailing party shall be entitled to reasonable attorneys' fees. The petitioners' pro rata portion of the purchase price totaled approximately $ 52,546; however, after attorney fees and other costs of sale the petitioners realized $ 47,447 on the sale of their stock. Their basis for these shares being $ 39,088, petitioners properly reported $ 8,359 as a long-term capital gain on their 1973 Federal income tax return. On or about July 29, 1974, Dayton filed a Demand for Arbitration with the American Arbitration Association seeking relief from the sellers for certain undisclosed liabilities of Empire. [3] After a hearing, the arbitrator determined an award in favor of Dayton in the amount of $ 31,764.20, plus $ 2,500 in attorneys' fees. By judgment entered June 1, 1976, the Superior Court of California, County of Sonoma, confirmed the arbitrator's award and added an additional $ 500 in attorneys' fees, resulting in a total judgment against petitioners of $ 34,764. Petitioners expended $ 7,197 in 1976 for legal fees and *372 other costs of litigation in connection with the above dispute. On their 1976 Federal income tax return the petitioner claimed the $ 34,764 paid in satisfaction of the above judgment as an ordinary loss. They also claimed the $ 7,197 paid in legal expenses connected therewith as an ordinary deduction for that year. Respondent has determined that these amounts are actually attributable to the sale of petitioners Empire stock and, as such, are allowable only as a long-term capital loss. OPINION Respondent on brief argues for the first time that only $ 27,046 of the $ 34,764 paid by petitioners in satisfaction of the June 1, 1976 judgment is allowable to them. [4] It is respondent's position that the excess paid by petitioners over $ 27,046 represents a voluntary payment by them of Kendall's share of the liability corresponding to the latter's ownership of 22 percent of Empire. After careful consideration of the entire *373 record we rule against the respondent on this issue. In the first place, the respondent did not raise the issue prior to submitting his initial brief herein. Neither the statutory notice of deficiency, the pleadings, nor his opening statement at trial even hinted that he disputed the amount petitioners would be allowed. Prior to briefing there was no indication that the respondent questioned anything but the character of the amounts paid by petitioners. It is obvious from their pleadings and presentation at trial that petitioners were unaware of this issue, and thus surprised and prejudiced thereby. On these facts we will not allow respondent to introduce the issue of the amount allowed at such an advanced stage of the instant litigation. See generally Estate of Horvath v. Commissioner, 59 T.C. 551 (1973). *374 Secondly, respondent has stipulated that the amount of the loss--$ 34.764--is not in issue. The relevant paragraphs of the parties' stipulation provide: 24. On Form 4797 of their 1976 return (Ex. 1-A), petitioners claimed an ordinary loss of $ 34,764.00 on account of their satisfaction of the Judgment. 25. The sole issue as to the $ 34,764.00 referred to in the preceding paragraph of this Stipulation of Facts is whether petitioners may claim the said $ 34,764.00 as an ordinary loss or may only claim the said amount as a capital loss. 29. There are no other issues to be decided by the Court in this case. Thus, respondent has conceded the amount of the loss in the joint stipulation of facts, and we shall not allow him now to argue to the contrary. [5]
*375 Having determined the amount of the loss we next must rule upon its character. Petitioners contend that they are entitled to ordinary loss treatment because all the elements which went into the judgment against them were ordinary and necessary business expenses under section 162. Respondent insists that, notwithstanding the nature of its elements, the judgment against petitioners arose out of the contract for the sale of their Empire stock and thus represents an offset to the amount realized on the sale thereof. Respondent argues that because petitioners' payment is a reduction of an amount previously reported as proceeds from the sale of a capital asset it is allowable only as a long-term capital loss. We agree with respondent. In the agreement for the sale of their Empire stock, the petitioners covenanted to indemnify Dayton for any undisclosed liabilities of Empire. Shortly after consummation of this contract Dayton became aware of significant undisclosed liabilities. The matter was referred to the American Arbitration Association for resolution whose award in favor of Dayton was confirmed by judgment of the Superior Court of California in the amount of $ 34,764. Petitioners' *376 payment pursuant to this judgment was no more than an outgrowth of the sale of their stock in Empire. The origin and character of the underlying claim was clearly capital in nature. As such, it is merely a capital charge or offset against the proceeds of that sale. Woodward v. Commissioner, 397 U.S. 572 (1970); Arrowsmith v. Commissioner, 344 U.S. 6 (1952) and their progeny. [6] Thus petitioners are entitled only to long-term capital loss treatment for amounts paid in satisfaction of the judgment. Petitioners also maintain that the $ 7,197 of legal fees incurred in defense of arbitration and the ensuing judgment are allowed as deductions for ordinary and necessary expenses of protecting income-producing property pursuant to section 212. Respondent asserts that the legal fees herein are inseparable from amounts paid by petitioners pursuant to the judgment and *377 thus they must be similarly treated. As with the underlying judgment, we find that the origin and character of the legal fees are capital in nature. Woodward v. Commissioner, supra.
Following Woodward, this Court has consistently held that in cases where the litigation involves the acquisition or disposition of capital assets the origin and character of the underlying claim will control the determination of the character of the litigation expenses. Von Hafften v. Commissioner, 76 T.C. #70 (May 21, 1981); Redwood Empire S. & L. Assoc. v. Commissioner, 68 T.C. 960 (1977), affd. 628 F.2d 516 (9th Cir. 1980). The origin and character of the claim test will characterize an expense as a capital expenditure if it is incidental to either the purchase or sale of a capital asset. Redwood Empire S. & L. Assoc. v. Commissioner, supra; Arthur H. DuGrenier, Inc. v. Commissioner, 58 T.C. 931 (1972). The petitioners' litigation with Dayton was clearly incidental to the sale of their *378 Empire stock--a capital asset--thus the legal expenses pursuant thereto are not allowable as an ordinary expense under section 212. They do, however, constitute a further offset against the amount realized from the sale of their Empire stock and are allowable as a long-term capital loss. Accordingly, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Prior to July 7, 1974, Dayton was succeeded in interest by Canteen Services of No. Calif., Inc. For purposes of clarity, throughout the remainder of this opinion we shall refer to either of these corporations as "Dayton" or as "purchaser."↩
3. The respondent has conceded that these liabilities were all ordinary and necessary business expenses of Empire, but asserts that their status as such does not, under the facts of the instant case, render them independently deductible by the petitioners.↩
4. It should be noted that this argument would affect the deficiency herein only if this Court allows the petitioners an ordinary loss in 1976 due to their payment of the judgment. If this Court sustains respondent's determination that the petitioners' payment gives rise to a capital loss then our decision on this issue will affect only the amount of the petitioners' capital loss carry-forward to future years.↩
5. If this issue were before us, it seems that petitioners' payment of $ 34,764 was entirely allowable. They clearly did not pay 100 percent of the judgment as volunteers.The contract for the sale of stock of Empire made only the petitioner jointly and severally liable to indemnify the purchasers. The 1976 judgment likewise requires payment only from petitioners. Under these facts respondent's allegation that petitioners could have and should have recovered a portion from Kendall under Cal. Civ. Code, secs. 1431 and 1432↩ (West 1954) is not correct. Clearly, different parties may sell similar stock to the same individual for different prices. In the instant case petitioners gave stock, warranties and covenants, including indemnification, to Dayton in exchange for cash while Kendall gave similar considerations, but not the promise to indemnify. Nothing in the record indicates that Kendall was liable to indemnify nor that petitioners voluntarily paid any liability owed by Kendall.
6. For a listing of several cases applying Arrowsmith v. Commissioner, 344 U.S. 6 (1952), in a case with similar facts to those presented herein, see Nelson v. Commissioner, T.C. Memo. 1971-327, affd. 472 F.2d 1224↩ (9th Cir. 1973).