756 F.2d 1425
 55 A.F.T.R.2d 85-1264, 85-1 USTC P 9293
 INLAND ASPHALT COMPANY, a Corporation, Robert M. and Elaine
Corroll, husband and wife, Donald E. and Donna L.
Tiede, husband and wife, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 84-7270.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 17, 1985.
Decided April 2, 1985.
 
 Robert E. Kovacevich, Spokane, Wash., for petitioners-appellants.
 Lisa Prager, Tax Div. U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.
 Appeal from the United States Tax Court.
 Before: WRIGHT, TANG, Circuit Judges, and B. THOMPSON,* District Judge.
 TANG, Circuit Judge:
 
 
 1
 Inland Asphalt Company, one of its shareholders and a former shareholder, appeal the tax court's ruling that corporate payments of personal tax deficiencies, paid by the corporation on behalf of the shareholders, constituted constructive dividends taxable to the shareholders. The court also ruled that the payments were nondeductible by the corporation as business expenses. We affirm.
 
 
 2
 * Inland Asphalt Company is a paving contractor in the State of Washington. In 1969, pursuant to Subchapter S of the Internal Revenue Code, the company distributed $225,000 to its only shareholders, Donald Tiede and Robert Carroll. Under the rules of Subchapter S, such distributions of cash are not taxable dividends when such amounts represent distributions of previously taxed income. Treasury Reg. Sec. 1.1375-4(a). However, distributions of property are not considered distributions of previously taxed income and may be treated as a taxable distribution to the shareholder. Reg. Sec. 1.1375-4(b). Thus, when the shareholders, pursuant to the advice of a corporate accountant, received their $225,000 distributions but each loaned $150,000 back to the corporation, the IRS treated this as a $75,000 distribution to each shareholder and a distribution of corporate obligations, or property, of $150,000 to each shareholder. See McKelvy v. United States, 478 F.2d 1217, 201 Ct.Cl. 557 (1973) (cash dividend followed by loan-back deemed a distribution of property). The shareholders claim that the loan-back was designed to improve the Corporation's financial position. The Commissioner issued deficiencies against the shareholders in 1973 and the shareholders sought redetermination in the tax court.
 
 
 3
 While this dispute was pending, Shareholder Tiede sold his shares in the company to a third party on June 5, 1975. At the same time, Tiede entered an agreement with the company under which the company would indemnify Tiede for any deficiencies subsequently found against him as a consequence of the distribution and loan-back arrangement.
 
 
 4
 On November 3, 1975, stipulated judgments were entered in the tax court of $81,000 each against the two shareholders. On November 21, 1975, the corporation's board of directors (consisting of Carroll and the shareholders who purchased Tiede's stock) passed a resolution authorizing corporate payment of the deficiencies on behalf of Tiede and Carroll. The money was paid before the end of the year.
 
 
 5
 The Commissioner disallowed the company's effort to claim the deficiency payments as a deduction for business expenses under section 162 of the Internal Revenue Code. The Commissioner also included the payments in the gross incomes of Tiede and Carroll. The Commissioner's determinations were challenged in the tax court, but the tax court found in favor of the Commissioner, holding that the payments of the deficiencies were constructive dividends to Tiede and Carroll and nondeductible by the corporation. This appeal followed.
 
 II
 
 6
 The appellants contend that the payment of deficiencies was deductible by the corporation. They reason that the deficiencies were a consequence of the corporation's effort to improve its cash flow through the use of a distribution and loan scheme. Thus, they argue that payments of any resulting tax liability flowing from this transaction are deductible as a business expense. In the alternative, the appellants contend that the corporation was obligated to pay the shareholders' deficiencies to extinguish a potential tort claim because the corporation's misrepresentation of the tax consequences of the scheme gave rise to the subsequent deficiencies.
 
 
 7
 Section 162(a) of the Internal Revenue Code allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business ..." "An 'ordinary' expense is one that is normally to be expected, in view of the circumstances facing the business, and a 'necessary' expense is one that is appropriate and helpful to the business." Palo Alto Town & Country Village, Inc. v. C.I.R., 565 F.2d 1388, 1390 (9th Cir.1977) (citing C.I.R. v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 252, 88 L.Ed. 171 (1943)). The question here is whether the payment of the shareholders' deficiencies was a "necessary" expenditure.
 
 
 8
 The tax court found that the expense was not necessary because there was no evidence to suggest that the shareholders were contemplating a suit against the corporation. Thus, there was no reason for the corporation to consider such an expenditure necessary. The determination of whether an expense is necessary and therefore deductible under section 162(a) is a question of fact and subject to the "clearly erroneous" standard of review. Lee v. C.I.R., 723 F.2d 1424, 1426 (9th Cir.1984) (deductibility of helicopter training lessons by jet pilot).
 
 
 9
 Both parties rely heavily on Old Town Corporation v. Commissioner, 37 T.C. 845 (1962). In that case, James McGraw of McGraw-Hill publishing fame offered employment to Charles Roberts, a business consultant, if he agreed to resign from his current position and assume a position with Old Town. Roberts agreed, but after several disputes with the board, a resolution was passed, ousting Roberts as company president and installing McGraw as his replacement. Roberts sued, making fraud and breach of contract claims against McGraw and a wrongful discharge claim against the company. In a letter to the board, McGraw stated that his dealings with Roberts were in the company interest and that he reserved the right to seek reimbursement from the company if he was found liable to Roberts. After consulting with its general counsel, the board decided that McGraw's reimbursement claim had some merit and entered a settlement with Roberts for $117,000, extinguishing Roberts' claims against both McGraw and the company.
 
 
 10
 The IRS disallowed the company's deduction of the settlement costs with respect to the claims against McGraw. The tax court, however, concluded that the full settlement amount was deductible as an "ordinary and necessary" business expense. In making that determination of necessity, the tax court applied a three-part test. First, it determined that the company was not fully confident that the suit would fail. Second, it found that the settlement payments were motivated by a desire to avoid the potential damages liability which could have resulted if McGraw had asserted a reimbursement action against the company. Third, the court found that the company's belief in the possible merit of McGraw's claim was reasonable and therefore justified the company's decision to settle the entire dispute. 37 T.C. at 858-59.
 
 
 11
 Unlike the situation in Old Town, the appellants here have not produced sufficient evidence to indicate that payment of the shareholders' deficiencies was a matter of "necessity." As the tax court found below, the corporation did not seek legal advice regarding the merits of a misrepresentation suit against it. Moreover, there was no evidence that the shareholders were even considering such a suit against the company. Hence, there is nothing to suggest that the corporation reasonably believed in the potential merits of a misrepresentation claim or indemnified the shareholders in an effort to avoid damages liability. Although litigation or a threat of litigation is not an essential element of deductibility in this context, the absence of objective indicia of necessity leaves us with nothing more than the corporation's subjective belief that the deficiency payments served some business purpose or provided a corporate benefit. A corporation's subjective assertion of necessity, however, cannot foreclose the question of business necessity under section 162. Jack's Maintenance Contractors, Inc. v. C.I.R., 703 F.2d 154, 156-57 (5th Cir.1983) (payment of sole shareholder's legal fees in criminal tax evasion case not necessary despite asserted importance of shareholder to business operations). The appellants offered to the tax court nothing more than a subjective assertion that payment of the deficiencies was a corporate "necessity" rather than a gratuitous benefit to the shareholders. Without objective evidence of necessity, the tax court was unpersuaded. We cannot say that the tax court's holding leaves us with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Burlington Northern v. Weyerhaeuser Co., 719 F.2d 304, 307 (9th Cir.1983). We conclude that the tax court was not clearly erroneous in its determination that Inland Asphalt's payment of its shareholders' deficiencies was not a necessary business expense.
 
 
 12
 Similarly, the corporation's contention that the payments are deductible because the loan-back scheme allegedly improved the corporation's financial position is unpersuasive. The corporation's only shareholders agreed to the distribution and loan-back arrangement. Assuming the corporation's financial picture was improved by the transaction, such improvement occurred without the necessity of paying the shareholder's personal tax liabilities. Without a misrepresentation claim being filed against the corporation, the tax court could reasonably assume that the taxpayers did not fault the corporation for the tax consequences of the distribution and loan-back arrangement.
 
 III
 
 13
 Former shareholder Donald Tiede argues that the payment of his deficiencies was not a constructive dividend to him because payment occurred after he had sold his shares in the corporation to a third party.
 
 
 14
 Tiede sold his shares on June 5, 1975. On that same day, he received an indemnity agreement from the corporation to pay any deficiencies assessed against him as a result of the 1969 sale and loan-back transaction. The deficiencies were settled in November 1975 and the payments were made by the corporation before the close of the calendar year.
 
 
 15
 Tiede's argument is unavailing. The payment of the deficiencies is similar to the payment of a dividend to the shareholder of record who has sold his shares between the time the dividend was declared and the time of actual payment. Generally, when a dividend is declared, the shareholder of record on the date of declaration receives the dividend as part of his gross income. Walker v. C.I.R., 544 F.2d 419, 421 (9th Cir.1976). Here, the shareholder entered an indemnity agreement which obligated the corporation to pay any deficiencies resulting from the 1969 distribution and loan-back transaction. This was similar to a dividend declaration, entitling the shareholder to an economic benefit upon settlement of the deficiencies. Although the corporation's actual payment of the deficiencies to the government came after Tiede had disposed of his shares, the payment fulfilled a preexisting obligation similar to a corporate obligation to pay dividends to shareholders of record who have since sold their shares.
 
 
 16
 Tiede argues, however, that the indemnity payment was merely part of the sale price of the stock. He claims that the buyers agreed to indemnify him and that this was partial consideration for the stock, thereby increasing the amount recognized for capital gain treatment. Here, however, the payments cannot be considered part of the sale price because the payments were made by the corporation instead of the purchasers of Tiede's stock. Thus, the payments are not part of the sale agreement.
 
 
 17
 The precedents cited by the appellant do not support his bid for capital gain treatment. In Ralph K.B. Clay, 42 T.C.M. 456 (1981), the sellers of stock agreed as part of the sale agreement to indemnify the purchasers from any pre-sale liabilities of the corporation which were not disclosed to the purchasers at the time of sale. Such liabilities were found. The sellers' effort to deduct the payment of the liabilities was rejected because the payments were an outgrowth of the contract of sale and thus merely reduced the gain recognized on the sale of the stock. Similarly, in A. Leroy Nelson, 30 T.C.M. 1423 (1971), aff'd, Nelson v. Commissioner, 472 F.2d 1224 (9th Cir.1973) (per curiam), the sole shareholder of a finance company sold his shares to another finance company and agreed to indemnify the buyer against claims arising prior to the sale. The tax court ruled that the indemnification was part of the purchase contract and merely offset the proceeds recognized on the sale. 30 T.C.M. at 1425. In both of these cases, the indemnity agreement was made part of the contract for the sale of shares. Such is not the case here where the corporate indemnity agreement is unrelated to the sale of shares to third party purchasers.
 
 IV
 
 18
 The tax court found that the payments were not deductible by the corporation. Absent any indication that the corporation would be put in a position of having to compensate the shareholders for possible misrepresentations as to the tax consequences of the distribution and loan-back scheme, the payments were found to be unnecessary expenditures of corporate funds. The payments were constructive dividends to the shareholders, including Tiede, who obtained the indemnity promise from the corporation in his shareholder capacity. Although actual payment followed his disposition of his corporate shares, the obligation to pay attached while he was a shareholder, assuring him of an economic benefit upon resolution of the underlying tax dispute.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Bruce Rutherford Thompson, Senior United States District Judge for the District of Nevada, sitting by designation