T.C. Memo. 2009-210

UNITED STATES TAX COURT


ESTATE OF TERENCE P. MELCHER, DECEASED,
TERESE MELCHER, EXECUTRIX, AND TERESE MELCHER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8941-07.               Filed September 15, 2009.


<u>Philip Garrett Panitz</u>, for petitioners.

<u>Michael W. Berwind</u>, for respondent.


MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $74,001 deficiency

in petitioners' Federal income tax for 2004 and a $14,800.20

accuracy-related penalty under section 6662(a).[1]  Petitioners are

_____

[1]All section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
(continued...)

Terese Melcher, as executrix of the Terence Melcher estate, and separately as petitioner wife.

We are asked to decide three issues.  The first issue is whether petitioners may deduct legal expenses incurred in defending appeals of a judgment and orders related to Terence Melcher's (Mr. Melcher's) divorce from Jacqueline Melcher (first wife).  We hold that the legal expenses attributable to the divorce are not deductible.  The second issue is whether petitioners may deduct legal expenses incurred in defending their interest in, and in collecting rent from, property held in the first wife's bankruptcy estate.  We hold that a portion of the expenses is deductible as ordinary and necessary expenses for the production of income and a portion is not deductible and must be capitalized.  The third issue is whether petitioners are liable for the accuracy-related penalty under section 6662(a).  We hold that they are not liable.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the accompanying exhibits are incorporated by this reference, and the facts are so found. Petitioner wife was Mr. Melcher's second wife.  She also serves

------

[1](...continued)
Tax Court Rules of Practice and Procedure, unless otherwise indicated.

as executrix of his estate. She resided in California when she filed the petition.

## Mr. Melcher's First Marriage

Mr. Melcher was the son of the singer, actress, and animal welfare advocate Doris Day. He served as the executive producer of her television series, the Doris Day Show, and earned most of his income from the series and her films. He also wrote and produced music, including songs performed by the Beach Boys, and owned interests in land and oil.

Mr. Melcher married his first wife in 1983. During their marriage he worked for Arwin Production Inc. and earned approximately $336,000 per year. His first wife did not work outside the home. They each brought substantial separate property into their marriage. Mr. Melcher owned a 40-percent interest in Arwin Production Inc. stock. In addition, he received entertainment and oil royalties. His first wife owned three real properties before the marriage. She owned a home in Los Angeles and two properties in Martha's Vineyard, Massachusetts, including an ocean-front property (Stonewall Beach). During the marriage Mr. Melcher's first wife purchased two properties in Carmel, California. In addition, the couple owned another Carmel property, which became the family residence in 1985 (family residence).

Stonewall Beach is a 3.75-acre parcel of ocean-front property that remained mostly vacant until 1989 when Mr. Melcher secured a $900,000 loan in his name to build a house on the property. The lender required that the first wife convert her separate title in Stonewall Beach into joint title with Mr. Melcher. She was reluctant to change the title but ultimately relented to speed construction of the house.

## Mr. Melcher's Divorce

Mr. Melcher's first marriage lasted 15 years and ended in 1998 after Mr. Melcher filed for divorce in California. The Monterey County Superior Court (family court) granted a status-only judgment of dissolution of marriage in 1998. The divorce proceeding was bifurcated to sever marital status in advance of sorting the respective interests in a multi-million dollar marital estate. Mr. Melcher and his first wife sought to protect their respective separate property interests and claimed community interests in property transactions that took place during the marriage. Mr. Melcher argued that the conversion of title to Stonewall Beach transmuted the property from his first wife's separate property into community property under California law. The family court agreed and found that Stonewall Beach, the family residence, and certain entertainment rights that were created during the marriage were community property. The family court also found the Arwin Production Inc. stock to be Mr.

Melcher's separate property and certain real properties to be his first wife's.

The family court awarded the family residence, valued at $1.24 million, to the first wife after giving Mr. Melcher a community property interest. In addition, the family court ordered that the Stonewall Beach property be sold and the proceeds be divided between the couple after assigning an $800,000 separate interest to the first wife. The family court also found that Mr. Melcher would not be required to provide spousal support after the sale.

In 2001 the family court accepted a third party's offer to buy Stonewall Beach for $12 million. The first wife vehemently resisted the sale. She filed motions for a new trial and to vacate the judgment, which were denied. She subsequently initiated numerous lawsuits to prevent the sale of Stonewall Beach. These lawsuits were in Massachusetts and California and included an appeal of the judgment and orders of the family court. She also filed for personal bankruptcy to stay the sale of Stonewall Beach.

Divorce Appeals

The first wife brought at least four separate appeals to the California State Court of Appeal (appellate court) from the judgment and orders of the family court. She argued, among other things, that the family court erred in its determination that

Stonewall Beach was transmuted into community property.  She also argued that the family court erred in concluding that she was not entitled to spousal support.[2]

The appellate proceedings lasted for approximately five years and the ownership of Stonewall Beach remained unresolved until 2006.  In January 2006 the appellate court affirmed in toto the challenged judgment and orders of the family court.  The Supreme Court of California denied the first wife's petition for further review in March 2006.

Petitioners hired C. Michael McClure and Joel Franklin to dispute the first wife's arguments raised in the appeal.  Petitioners incurred $127,499.71 in legal expenses to Mr. Franklin and $74,473.57 to Mr. McClure in 2004.

Bankruptcy Proceeding

The first wife filed for bankruptcy shortly after filing the appeals and a day before the close of escrow on the court-ordered sale of Stonewall Beach in June 2001.  The United States Bankruptcy Court (bankruptcy court) found that the first wife supported herself in large part through rental income from Stonewall Beach and that its sale would eliminate her source of income.  An automatic stay was triggered on the sale of Stonewall Beach.

---

[2]The parties made no arguments concerning the deductibility of costs associated with the other issues in the appeals.

The first wife and the creditors' committee filed several plans of reorganization between 2001 and 2004. A plan (the plan) was finally confirmed by the bankruptcy court in 2005 over petitioners' objections. The plan provided that Stonewall Beach and the family residence remain property of the first wife's bankruptcy estate until all issues in the divorce proceedings were determined by final and non-appealable orders.

Petitioners' main objective in the bankruptcy litigation was to collect rental income from Stonewall Beach and the family residence. Petitioners sought to collect $1 million in rental income from the two properties. Petitioners also attempted to persuade the first wife's bankruptcy estate to sell Stonewall Beach so that they could collect their share of the proceeds. Petitioners argued that they are entitled to one-half of the projected $12 million sale price of Stonewall Beach after allowing for the first wife's separate interest of $800,000. The record is unclear as to what other issues petitioners' lawyers raised in the bankruptcy proceeding. Petitioners hired the Loeb & Loeb law firm to defend their interests in the bankruptcy proceeding and incurred $72,886.63 in legal expenses in 2004.

The bankruptcy proceeding is still pending.[3]

---

[3]The United States Bankruptcy Appellate Panel of the Ninth Circuit concluded in 2006 that the first wife's bankruptcy proceeding was an abuse of process and merely functioned to frustrate the implementation of the family court orders. The United States Court of Appeals for the Ninth Circuit affirmed the

(continued...)

Petitioners' Return and Deficiency Notice

Petitioners hired John Woodford, a certified public accountant at Robertson, Woodford & Summers LLP to prepare their tax return for 2004. Petitioners claimed $165,627 of legal expenses as unreimbursed employee expenses on Schedule A, Itemized Deductions, and $191,372 of legal expenses on Schedule C, Profit or Loss From Business, in 2004. Respondent issued a deficiency notice to petitioners disallowing these legal expense deductions, and petitioners timely filed the petition.

## Discussion

### I. Introduction

We are asked to decide whether petitioners may deduct various legal expenses incurred in the divorce appeals and bankruptcy litigation involving Mr. Melcher's first wife. The answer depends on whether the legal expenses were ordinary and necessary expenses for the production of income. We must also determine whether petitioners are liable for the accuracy-related penalty.

We first address the burden of proof.

### II. Burden of Proof

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); Welch

---

³(...continued)
judgment in 2008.

v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not argue that the burden of proof shifted to respondent under section 7491(a). Petitioners also did not establish that they satisfy the requirements of section 7491(a)(2). We therefore find that the burden of proof remains with petitioners.

III. Legal Expenses and Origin of the Claim Test

We now turn to whether petitioners' legal expenses are deductible as ordinary and necessary expenses for the production of income under section 212. Taxpayers may generally deduct all ordinary and necessary expenses paid for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2). Taxpayers may not deduct, however, personal, living, or family expenses. Sec. 262(a). Legal expenses and other costs paid in connection with a divorce are generally not deductible because they are considered personal expenses. Sec. 1.262-1(b)(7), Income Tax Regs. In addition, taxpayers may not deduct expenses for acquiring or defending title to a capital asset. See sec. 263; Woodward v. Commissioner, 397 U.S. 572, 576 (1970); sec. 1.263(a)-2(a), (c), Income Tax Regs.

We apply the origin of the claim test to determine whether a taxpayer's legal expenses are personal or necessary for the production of income. Under this test, the characterization of legal expenses incurred to defend against a lawsuit depends on

whether the suit arose in connection with the taxpayer's personal or profit-seeking activities.  See <u>United States v. Gilmore</u>, 372 U.S. 39, 48 (1963).  It does not depend on whether the taxpayer successfully defended the suit.  See <u>id.</u>

The ascertainment of a claim's origin and character must be made on the basis of the facts and circumstances of the litigation.  <u>Guill v. Commissioner</u>, 112 T.C. 325, 329 (1999). The origin of the claim test is not a mechanical search for the first in the chain of events that led to the litigation but rather requires an examination of all the facts.  See <u>Boagni v. Commissioner</u>, 59 T.C. 708, 713 (1973).

## IV.  <u>Legal Expenses Related to the Divorce Appellate Proceeding</u>

We now turn to the origin and character of petitioners' $201,973.28 legal expenses in the divorce appellate proceedings. Petitioners argue that the disputes regarding the ownership and sale of Stonewall Beach were not part of the divorce proceedings but rather a fight over income-producing property that was reserved after a legal divorce was granted.  Petitioners further argue that the legal expenses were incurred for the production and collection of income and therefore are deductible under section 212.  Respondent counters that petitioners' legal expenses stemmed from Mr. Melcher's determination to end his marriage to his first wife and therefore are nondeductible personal expenses.

Petitioners defended against two main arguments the first wife asserted in the appellate proceedings. The first wife argued that the family court erred in finding that the title to Stonewall Beach was transmuted from her separate property into community property. She also argued that the family court erred in finding that she was not entitled to spousal support.[4]

The determination regarding the origin and character of divorce-related legal fees revolves around whether the spouse's claims toward a property would have existed but for the marriage relationship. See United States v. Gilmore, supra at 52. "If the claim could not have existed but for the marriage relationship, the expense of defending it is a personal expense and not deductible." Fleischman v. Commissioner, 45 T.C. 439, 446 (1966); see United States v. Gilmore, supra at 52. The record establishes that the first wife's ownership argument towards Stonewall Beach did not stem from the marriage. She held title to Stonewall Beach before she married Mr. Melcher. The transfer of title from the first wife's separate property to joint ownership with Mr. Melcher also did not stem entirely from the marriage but was due to Mr. Melcher's financial investment in constructing a residence on the property. We therefore conclude that the origin of the legal expenses incurred to establish Mr. Melcher's ownership of Stonewall Beach was not personal.

[4]Petitioners produced no evidence that the issue of rents was raised in the divorce appellate proceeding.

Concluding that the expenses were not personal does not necessarily mean that petitioners' legal expenses relating to the ownership of Stonewall Beach are deductible, however.  Expenses incurred in connection with the defense or perfection of title to a capital asset are nondeductible capital expenditures.  See Woodward v. Commissioner, supra at 576; Spangler v. Commissioner, 323 F.2d 913, 919 (9th Cir. 1963), affg. T.C. Memo. 1961-341; Boagni v. Commissioner, supra at 713.  The record establishes that the first wife appealed the judgment of the family court regarding transmutation of the title to Stonewall Beach.  Mr. Melcher's title to Stonewall Beach was therefore called into question by the first wife's appeals and the issue was not resolved until 2006 when the appellate court confirmed the family court's judgment.  Accordingly, to the extent that petitioners incurred legal expenses to defend their title to Stonewall Beach, the legal expenses are not deductible and must be capitalized.  In addition, we find that legal expenses associated with defending against the first wife's claims regarding spousal support stemmed entirely from the marriage.  These expenses are therefore personal and are not deductible.  In sum, we conclude that none of the legal expenses petitioners incurred in the divorce appeals were deductible.

V.    Legal Expenses Related to the Bankruptcy Proceeding

We now examine the origin and character of petitioners' $72,886.63 legal expenses incurred in the bankruptcy proceeding. Petitioners sought to collect rental income from Stonewall Beach and the family residence in the bankruptcy proceeding. They also sought to sell Stonewall Beach and collect their share of the proceeds.

Expenses incurred in connection with the acquisition or disposition of a capital asset are nondeductible capital expenditures. See Woodward v. Commissioner, 397 U.S. at 575-576; Spangler v. Commissioner, supra at 921; Boagni v. Commissioner, supra at 713. Moreover, legal expenses relating to sale of a property are capital expenditures and must be offset against the sale price. See Gunn v. Commissioner, 49 T.C. 38, 57 (1967); see also Clay v. Commissioner, T.C. Memo. 1981-375. Taxpayers may deduct, however, the portion of legal expenses allocated to recover income derived from a capital asset. See Kelly v. Commissioner, 23 T.C. 682 (1955), affd. 228 F.2d 512 (7th Cir. 1956); see also Boagni v. Commissioner, supra at 715; Estate of Arnett v. Commissioner, 31 T.C. 320, 335 (1958); Hahn v. Commissioner, T.C. Memo. 1976-113.

The record establishes that petitioners incurred legal expenses to facilitate the sale of Stonewall Beach. We conclude that the expenses associated with petitioners' attempts to sell

Stonewall Beach originated in the disposition of a capital asset and therefore are nondeductible capital expenditures.  To the extent that petitioners incurred legal expenses to collect accumulated rents from Stonewall Beach and the family residence, however, we find the origin of those expenses to be in the production of income, and therefore they are deductible.

The record fails to allocate the legal expenses between the time spent on the Stonewall Beach sale and the time spent to collect rent.  It is therefore impossible to determine with exactness what portion of the legal expenses was paid for the sale of Stonewall Beach and what portion is allocable to collecting rental income.  We have held under similar circumstances that we may approximate the allocation and apportionment under the principle of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  See Estate of Arnett v. Commissioner, supra at 335.  Petitioners sought to collect $1 million in rent, and the record establishes that they sought approximately $5 million in sale proceeds from Stonewall Beach.  Thus, we conclude that one-sixth of the $72,886.63 legal expenses (or $12,147) was expended to collect rent and is deductible.

VI.  Accuracy-Related Penalty

We now address whether petitioners are liable for the accuracy-related penalty for a substantial understatement of income tax in 2004.  A taxpayer may be liable for a penalty of 20

percent on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax. Sec. 6662(a) and (b)(2). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.

Respondent has met his burden of production with respect to petitioners' substantial understatement of income tax. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Petitioners reported their income tax liability for 2004 to be $39,210. Respondent adjusted their tax liability to $133,211 and determined a deficiency of $74,001. Although we have determined that petitioners are entitled to deduct $12,147 of the legal expenses incurred in the bankruptcy proceeding, the understatement remains greater than $5,000 or 10-percent of their correct tax liability.

A taxpayer is not liable for an accuracy-related penalty, however, if the taxpayer acted with reasonable cause and in good faith with respect to any portion of the underpayment. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the

taxpayer, and the taxpayer's reliance on the advice of a professional. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the opinion of a tax adviser will constitute good faith and reasonable cause where the reliance is reasonable. United States v. Boyle, 469 U.S. 241, 250 (1985).

Petitioners relied upon the advice of a certified public accountant who prepared the tax return and determined that petitioners' legal expenses were deductible expenses. Taking into consideration the number of the issues that were raised in the divorce appellate and the bankruptcy proceedings and the complexity involved with determining the tax consequences of each issue, we find that petitioners acted with reasonable cause and in good faith when they relied on the advice of a certified public accountant. We accordingly do not sustain respondent's determination regarding the accuracy-related penalty for 2004.

VII. Conclusion

Petitioners' legal expenses relating to the divorce appeals are nondeductible because they were either capital expenditures or personal expenses. Further, petitioners' legal expenses relating to the bankruptcy proceeding must be allocated between deductible expenses for the production of income and nondeductible capital expenditures. In addition, petitioners are not liable for the accuracy-related penalty.

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.